## ZIBA B. RUGGLES v. THE FIRST NATIONAL BANK OF CENTREVILLE.

*Removal of growing crops after foreclosure—Irregularities.*

An order for the amendment of pleadings will not sustain an exception if both parties conformed to its terms.

Where the record shows that exceptions were taken to a commissioner's report, but does not show what they were, it cannot be assumed, for the purpose of finding error, that they were of any force.

An error in reciting the date of a foreclosure decree in the commissioner's report of sale is immaterial where the record furnishes the means of correcting it.

It is not good practice, in directing the correction of a commissioner's report of a foreclosure sale, to order that on filing the corrected report "the said sale be and the same is hereby in all respects confirmed." But it does not make the proceedings void.

Regularity is presumed in foreclosure proceedings, if the reverse is not shown.

A court of law will not in a collateral case review irregularities in the procedure of a court of equity, if they were not jurisdictional.

A foreclosure deed to the mortgagee gives him the same estate as a foreclosure of the equity of redemption, and is as effective as against the owner of the equity as if executed by such owner.

Growing crops pass with the soil under foreclosure deed, and on proper application the court may perhaps provide for their preservation until possession is given to the purchaser.

The title of a purchaser on valid foreclosure of a mortgage regularly recorded, relates back to the delivery of the mortgage as against all intervening purchasers and incumbrancers who are made parties or who become interested *pendente lite.*

The confirmation of a foreclosure sale covering growing crops relates back to the sale, and entitles the purchaser to control the crops from that time if no equities prevent, and after due notice to interested parties.

Error to St. Joseph. Submitted Jan. 8. Decided April 8.

TROVER. Defendant brings error.

*R. R. Pealer* for plaintiff in error. A foreclosure sale

does not become absolute until confirmed (*Demaray v. Little* 17 Mich. 386) and an assignee of the mortgager is entitled until then to possession and the income from the land, *Wagar v. Stone* 36 Mich. 366; *Newton v. McKay*, 30 Mich. 380; *Howard v. Bond* 42 Mich. 131.

*John B. Shipman* for defendant in error. Crops pass on foreclosure with the land, *Vanderkarr v. Thompson* 19 Mich. 82; *Tripp v. Hasceig* 20 Mich., 254; *Scriven v. Moote* 36 Mich. 64; on confirmation of a foreclosure sale, the purchaser's title relates back to the time of delivery of the deed, *Fuller v. Van Geesen* 4 Hill 171; 2 Jones' Mortgages §§ 1637-58.

GRAVES, J. In November, 1878, the bank brought trover against Ruggles for the conversion of six hundred bushels of oats and two hundred pounds of peppermint oil. He pleaded the general issue, and gave notice of special matter of defense. In the course of the trial, which occurred in March, 1879, the counsel for the bank, after the testimony was closed, asked leave to amend the declaration so as to count for the conversion of a specified crop of peppermint herbs instead of two hundred pounds of peppermint oil. An objection being made, the court observed that if the amendment was permitted it would be upon the terms of opening the case for further defense, if desired, and if not prepared, then upon the further terms of allowing a continuance for preparation. No answer being given to the court's suggestion, and counsel proceeding to agree upon the proof of the value of the property in question, and plainly disclosing a purpose to complete the trial without delay or further showing notwithstanding the amendment, the court overruled the objection and permitted the change in the declaration upon the terms of payment by the bank of an attorney fee of five dollars. The condition was complied with. The terms were tendered and accepted. In view of the circumstances of the case it is

not admitted that if the court had allowed the amendment without terms it would have been an error for which a reversal must have been ordered.  But as both parties conformed to the order and virtually assented to the condition, all right to base an exception upon it was foreclosed.

The mint and oats in controversy were produced on certain premises which were owned and occupied by one Jones on the 27th of May, 1876, and which on that day he mortgaged to the bank.  April 10, 1877, the mortgage was placed on record, and on the 28th of May ensuing the bank filed a bill to foreclose it.  A month later notice of pendency of suit was filed.  The parties made defendants were the mortgagor and wife, the First National Bank of Sturgis, Fred Wolf and Edgar A. Jones. Subsequent to this, and in September, 1877, Ruggles obtained from defendant Wolf a leasehold interest which was subject to the mortgage, and by its own terms to expire in March, 1878, and he immediately took possession under this interest.  In December, 1877, at assignee's sale in bankruptcy proceedings against Jones, the mortgagor, he purchased the equity of redemption.

These interests, it will be noticed, which Ruggles acquired, were under the mortgagor and subject to the mortgage, and were obtained by Ruggles subsequent to the commencement of the foreclosure, and after the filing of the notice of the pendency of that case, and if the suit in equity is to be considered as having effectuated foreclosure his rights were cut off by it.  The mint and oats were the growth of 1878, and the bank grounds its right and title on the purchase made by it of the premises under a decree of sale granted in the foreclosure suit.  The decree was allowed February 7, 1878, in the usual form.  It required payment on or before May 29, 1878, and authorized a sale thereafter in case of default.

It is admitted that all the proceedings up to and including the decree were regular.  The debt not being paid, the commissioner advertised the premises for sale

under the decree, and on the 15th of July, 1878, being the time appointed, sold them to the bank at a price very much less than the sum called for by the decree. On the same day the report of sale was filed and the usual order of confirmation entered. The fund was also applied and the costs satisfied, and the proper deed executed and acknowledged, and on or before the 25th of July the deed was delivered, and on the last named day the bank caused it to be placed on record.

August 6th, on the motion of the solicitor for the bank the commissioner was ordered to amend his report. The nature of the amendment ordered is not explained by the record. But the commissioner, it appears, assumed to comply and on the same day filed what he denominated an amended report. It misstated, however, the date of the decree, and gave it as *July* 7 instead of *February* 7. On the filing of this report a new order of confirmation was entered under the rule. Meanwhile, and after July 31st and before August 6th, Ruggles, although notified by the bank that it claimed the property under the purchase on foreclosure, proceeded to appropriate it to his own use.

On August 20th it appears there was a hearing on exceptions to the report. What they were is not shown, and we cannot assume for the purpose of finding error, that they were of any force. The only defect apparent is the mistake made in reciting the date of the decree.

The circuit judge directed the commissioner to "correct" his report in ten days, and ordered that "upon filing the said corrected report the said sale be and the same is hereby in all respects confirmed." The nature of the required correction is not expressed, and the only thing to which the requirement can be referred is the mistaken date just mentioned. This defect was of no importance. It was a mere clerical inaccuracy which the record obviated. That the judge approved the sale is manifest, because he ordered it confirmed. No new proceedings were contemplated. Nothing more was

sought than an actual correction of the mistaken date, and it appears from the bill of exceptions that the commissioner, in the course of a day or two after the order, inserted the proper date in the report on file.

The court below overruled the objections urged against the equity proceedings, and directed the jury to find in favor of the bank.

No fault has been charged against the actual sale made by the commissioner, and none is discovered. That must be deemed valid. It is of the later practice that exception is taken. But we find no evidence in the record of any impropriety more serious than irregularity of practice. If there was greater cause for complaint than that, it should have been disclosed, and in such manner as to be passed upon. So far as the contrary is not apparent, regularity is presumed.

The course taken to reform the report and confirm the sale was not good practice. The proceedings were not void, however. If properly applied to, the court in charge of the foreclosure would have allowed the deviations from strict procedure to be corrected. It is not the province of a court of law to review them, nor of any jurisdiction to do so in a collateral case. *Torrans v. Hicks* 32 Mich. 307; *Clason v. Corley* 5 Sandf. (S. C.) 454; *Dorsey v. Kendall* 8 Bush 294; *Lynch v. Bernal* 9 Wall. 315, 322; *Lasell v. Powell.* 7 Cold. 278; *Cockey v. Cole* 28 Md. 276; *Wilson v. Miller* 30 Md. 82. Jurisdictional defects are subject to different considerations.

It was contended in the court below that the foreclosure sale had never been confirmed at all, and that notwithstanding the sale itself had taken place, the want of confirmation left the growing crops subject to Ruggles' disposal. The view already explained of the objections to the foreclosure proceedings affords an answer to this claim. Notwithstanding the departures from accurate practice, there were in substance the steps essential to work confirmation, and we think that the order of August 20th, and especially after the correction directed

by the court, operated to confirm the sale of the 15th of July. But as the conversion, although subsequent to the sale, was yet prior to the confirmation, the further claim is made that Ruggles, who was in actual possession, was entitled to appropriate during that interval such crops as were then growing. His right was that of holder of the equity of redemption and nothing else, and this interest he had obtained during the pendency of the suit. Being mortgagee, the bank acquired the same estate by the commissioner's deed as it would have held in case of foreclosure of the equity of redemption; and it was just as effectual against Ruggles as if he as owner of the equity of redemption had executed it. Comp. L. § 5154; *Tilton v. Cofield* 93 U. S. 163.

The crops in controversy were growing at the time of the sale, and they passed by it with the soil to which they were united. *Scriven v. Moote* 36 Mich. 64; *Jones v. Thomas* 8 Blackf. 428; *Lane v. King* 8 Wend. 584; *Aldrich v. Reynolds* 1 Barb. Ch. 613; *Gray v. Brignardello* 1 Wall. 634; *Bank of United States v. Voorhees* 1 McLean 221; *Gossom v. Donaldson* 18 B. Mon. 230; *Irwin v. Jeffers* 3 Ohio St. 389.

The methods which chancery has recognized for completing proceedings and putting the purchaser in possession by its own authority had not yet been carried out, and the power of the court over the sale had not ceased. But the bank as purchaser had acquired rights which applied as fully to the growing crops as to the soil, and the proceeding giving rise to these rights was the main one in the case to invest the bank with an unqualified title. Ruggles could not take upon himself the right to step in and dispose of the crops covered by the sale and purchase except at his own peril. He had no more power to detach them from the operation of the mortgage and foreclosure sale than he had to detach the land. Undoubtedly the court, on proper application and on failure of the parties to arrange amicably, might have provided for the temporary preservation and pro-

tection of the crops.   The principle seems to be recognized in the case of *Mutual Life Ins. Co. v. Bigler* 79 N. Y. 568, just decided by the Court of Appeals.   But that is not now important.   Whenever the proceedings are not void and the record of the mortgage is regular, the title of the purchaser in these sales in equity under foreclosure decrees takes effect by relation to the delivery of the mortgage as against all intervening purchasers and encumbrancers who are made parties or who become interested *pendente lite.   Osterberg v. Union Trust Co.* 93 U. S. 424; Rorer Judicial Sales § 53; 5 Cruise R. P. 510, 511.

The same principle operates to connect the confirmation of the sale as to the growing crops with the sale itself, and to satisfy the sort of condition subsequent to which, by virtue of the practice of the court, the sale is made subject.   And where there is no unreasonable or misleading conduct or delay, and no equities will be infringed, the confirmation is entitled to operate in favor of the purchaser's right from the time of the sale itself, as respects the crops which were not then severed.   To preclude misapprehension, it may be added that there may be cases where the purchaser's conduct would require the court to consider him as having waived or abandoned all right to the crops, or as having estopped himself against asserting any.   Such cases must be disposed of as they arise.   Here there was no delay of which Ruggles' can complain, nor any misleading conduct.   He received no prejudice.   The proceedings to confirm were commenced on the very day of the sale, and we are not informed that there was any objection which was not frivolous; and as we have seen, Ruggles was seasonably notified that the bank claimed these crops under its purchase, and that he must not appropriate them.   This purpose was never departed from.

No error is shown, and the judgment should be affirmed with costs.

MARSTON, C. J., and CAMPBELL, J., concurred.

Cooley, J., dissenting. Ruggles was sued in the court below in trover for oats and peppermint grown upon a certain farm in St. Joseph county in the year 1877. Ruggles had bought the farm at a sale in bankruptcy made December 18, 1877. The plaintiff below at that time had a mortgage upon it, which was in process of foreclosure, and the purchase of Ruggles was made subject to it. The oats were sown by him in the spring of 1878, and both crops were harvested and removed by him from the farm August 5, 1878. The questions in the case arise chiefly on the foreclosure of the mortgage, which took place in chancery. The decree bore date February 7, 1878, and authorized a sale at any time after May 29, 1878, and after due notice. It also provided that "the purchaser or purchasers of said mortgaged premises at such sale be let into possession thereof, and that any of the parties to this cause who may be in possession of said premises or any part thereof, and any person who, since the commencement of this suit, has come into possession under them or either of them, deliver possession thereof to such purchaser or purchasers on production of the commissioner's deed for such premises, and a certified copy of the order confirming the report of such sale after such order has become absolute."

No question is made of the validity of the decree. Sale was made under it July 15, 1878, and the commissioner's report of sale was filed the same day. Two of the defendants in the suit filed exceptions July 19th, and on August 6 complainant applied for leave to the commissioner to file an amended report, which was given. The amended report was filed the same day, and exceptions were also filed thereto. These last exceptions were brought to a hearing August 20, whereupon the court made the following order:

"The exceptions to the commissioner's report of sale in this cause coming on to be heard, and having been argued by counsel for the respective parties; it is hereby ordered that said commissioner correct his said report and file the same with the register within ten days, and upon filing the said corrected report the said sale be and the same is hereby in all respects confirmed. And it is further ordered that the complainant pay to the

defendants five dollars as an attorney's fee upon said hearing."

It will be noted that this order does not specify in what particular the report shall be amended, nor is there anything in the record to show what correction the court had in mind. The order plainly does contemplate, however, that the report will be taken from the files for the purpose of correction, and after being corrected, refiled, within ten days, whereupon it shall stand confirmed. On the trial of this cause the plaintiff was allowed to put in parol evidence in explanation of this order, but no one seemed to be able to state with certainty what correction was intended. The commissioner who made the sale seems to have had his attention called to the matter by the acting register within two or three days after the making of the order, but the register did not know what correction was required. The commissioner took the report and looked it over, and finding an error in a date, corrected that, assuming that nothing more was requisite. There does not appear to have been any refiling, and if the defendant, or any other person, had desired information respecting the time when the report became confirmed, he would have searched the records for it in vain. Indeed, the defendant offered to show that he examined the files from time to time afterwards, in order to ascertain if any further report was filed, but the offer was overruled. No further action of the court in the premises appears. The defendant remained in possession of the land some two months after taking off the crops, but under what circumstances he then surrendered possession does not appear, and perhaps is not important. The usual commissioner's deed on chancery sales was executed and delivered to the plaintiff, and probably possession was taken under it as soon as defendant left.

The plaintiff's case rests upon two propositions: *first*, that the sale was confirmed; and *second*, that on confirmation his title related back to the time of the sale,

and made the crops his which were taken off subsequently.   It is not claimed the crops would have been his in the absence of a confirmation.

The confirmation is said to have been complete, because no correction of the report was required, except the mere alteration of a date, and that might properly be corrected in the mode the commissioner adopted.   But in saying this, the facts upon which it rests are assumed: nothing in the record supplies or suggests them.   Whether it was the date the court had in mind, or something else, or many things else, we do not know.   It seems hardly necessary to say that the evidences of that judicial intent which is to extinguish rights and transfer titles must appear of record, and cannot be left to rest on the mere understanding of parties who may have heard what the judge said.   Still less can it be effective when only guessed at by persons to whom it was never communicated, and who have no better means of arriving at it than by applying their own judgment to the facts which they supposed were before the judge, and inferring therefrom the judgment he should have pronounced.   A solemn judgment, which is to have faith and credit, and be undisputed and undisputable everywhere cannot be left to stand partly upon writings and partly upon the surmises and suppositions of parties or officers as to what the court intended.   It must speak for itself and in no uncertain language.

No confirmation of the sale being shown, it follows that the plaintiff has shown no title to the specific chattels for the conversion of which the suit is brought.   The case of *Wœhler v. Endter* 46 Wis. 304, in which a careful opinion was delivered by Mr. Justice Cole, fully covers the case.   *Giles v. Comstock* 4 N. Y. 270 is also in point. That was a suit brought by a party defendant in a foreclosure suit to recover a quarter's rent falling due in advance, April 1, 1845, upon a lease by himself to the occupant.   The premises were actually sold on the decree three days before the rent fell due, but the sale was

not confirmed until two months afterwards. The tenant attorned to the purchaser, but was sued by his landlord for the rent. The court sustained the action, affirming that the purchaser under the decree had no right whatever to the rent which had become payable by the terms of the lease after the sale, but previous to the confirmation, and that the tenant wrongfully attorned to him. Says Mr. Justice Taylor, speaking for the whole court: "According to the terms of the decree under which the purchaser claimed, the parties to that foreclosure suit, who might be in possession of the premises sold, were ordered to deliver possession to the purchaser on production of the master's deed and a certified copy of the order confirming the report of sale after the same should have become absolute. Under this decree, it seems to me that the defendant, being a party to that suit, and representing the owner of the equity of redemption, was entitled to hold possession, until by the terms of the decree he was ordered to surrender it, and although an eviction by process of law is not necessary to justify an attornment of the tenant, yet for his justification he must be able to show that the claimant by paramount title has a legal and equitable right to the possession of the premises *in præsenti*." Because the purchaser had no such paramount title before confirmation of his purchase, the court found the attornment unauthorized. I agree with the court fully to this extent, and express no opinion on the further conclusion that the confirmation could not relate back so as to give the purchaser rights from the date of the sale as against any one standing in the right of the mortgagor. I do not think that question is before us.

The necessary conclusion is that the circuit court erred in giving judgment for the plaintiff for the value of the crops removed, and that the judgment should be set aside with costs and a new trial awarded.