DIEFENBAKER v. POST.

1. LANDLORD AND TENANT — SHARE-CROPPING — MORTGAGES — FORE-
CLOSURE—GRANTEE OF PURCHASER AT SALE.
    One who purchased farm from purchaser at mortgage foreclosure
    sale with knowledge that mortgagor's tenant was in possession
    at time of purchase and had put in wheat on shares while a
    tenant took title subject to tenant's rights in the growing crop,
    hence is liable for destruction or harvest of such crop.

2. SAME—SHARE-CROPPING—MORTGAGES—PURCHASER AT FORECLO-
SURE SALE.
    Purchaser at foreclosure sale of farm on which mortgagor's ten-
    ant had sown wheat held, liable for full amount of tenant's
    interest in entire crop of wheat destroyed or harvested by pur-
    chaser's grantee rather than merely tenant's interest in mini-
    mum amount required by lease to be put in by tenant.

3. SAME—MORTGAGES—FORECLOSURE—CROPS—WAIVER—ESTOPPEL.
    Ordinarily foreclosure of a mortgage would terminate all rights
    of mortgagor and his tenant even as to latter's rights in grow-
    ing crops planted by tenant, and grantee of purchaser at fore-
    closure sale would ordinarily acquire title to such crops but
    purchaser or grantee may waive right to such crops or be
    estopped to assert title thereto.

4. FRAUDS, STATUTE OF—MORTGAGES—FORECLOSURE—ORAL LEASE.
    In suit involving mortgagor's tenant's right to recover value of
    services in plowing land, his oral agreement with purchaser at
    foreclosure sale, claimed to have been entered into before
    period of redemption expired, held, insufficient to allow re-
    covery for such item where agreement was for lease for a year
    but was not performable within such period as year could not
    begin until after period of redemption expired (3 Comp. Laws
    1929, §§ 13411, 13413).

5. LANDLORD AND TENANT—SHARE-CROPPING—WHEAT—ACCOUNTING.
    Mortgagor's tenant who planted wheat in fall under a share-
    cropping agreement with purchaser at foreclosure sale held,
    entitled to recover his share of amount of market value of
    crop harvested, plus estimated yield of acreage plowed under
    by purchaser's grantee, plus value of straw and screenings,
    less reasonable cost of harvesting and threshing.

6. SAME—SHARE-CROPPING—HARVESTING FALL WHEAT.

 Mortgagor's tenant who planted wheat in fall under an oral
 share-cropping agreement with purchaser at foreclosure sale
 *held*, chargeable with cost of harvesting and not entitled to
 treble damages where purchaser's grantee harvested wheat so
 planted pursuant to order of court and tenant brought suit in
 equity (3 Comp. Laws 1929, § 15124).

7. TRESPASS—TREBLE DAMAGES—CUTTING GRAIN—STATUTES.

 Statute authorizes recovery of treble damages for cutting grain
 without leave of the owner thereof in action at law only (3
 Comp. Laws 1929, § 15124).

8. APPEAL AND ERROR—ABANDONMENT OF COUNTERCLAIM.

 Counterclaim for rent after period of redemption expired *held*,
 abandoned by brief on cross-appeal by defendant purchaser at
 mortgage foreclosure sale.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 8, 1936. (Docket No. 33, Calendar No. 38,851.) Decided June 17, 1936.

Bill by Freeman Diefenbaker against John Post and Jennie Hatch, administratrix of the estate of Levina Haynes, deceased, for an injunction, for a division of crops, and other relief. Cross-bill by defendant Hatch for rent. From decree for plaintiff in an alleged insufficient amount against defendant Hatch only, plaintiff and defendant Hatch appeal. Decree vacated and one for greater amount ordered entered against both defendants.

*Fred P. Geib*, for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal*, for defendant Post.

*M. Den Herder*, for defendant Hatch.

NORTH, C. J. In 1929 William Blake and his wife Lillie were the owners of a 155-acre farm in Gaines

township, Kent county. This property was subject to a mortgage of $11,000. They entered into a written lease of the farm with plaintiff, Freeman Diefenbaker. There were subsequent oral renewals of this lease, the last of which was to expire March 15, 1935. The lease and renewals thereof contained the following provision:

"It is understood and agreed that at the expiration of this lease or extension thereof, the wheat in the land is to be harvested by second parties (tenant) and the crop divided on shares, one-third to first parties (owners) and two-thirds to second parties. * * * At termination of this lease there shall be at least 15 acres of land seeded to wheat."

While plaintiff was occupying the farm premises as tenant the mortgage thereon was foreclosed. The period of redemption expired January 18, 1935. Prior to this date, and in connection with divorce proceedings, the equity of Mr. and Mrs. Blake became vested solely in Mrs. Blake. As the time approached for putting in wheat on the premises in the fall of 1934, plaintiff evidently became concerned about his right to harvest the crop after the period of redemption expired. He undertook to enter into an agreement both with Mrs. Blake and with Mrs. Hatch, who was the administratrix of the estate of the mortgagee, then deceased. He consummated an agreement with Mrs. Blake that in the event of redemption from the mortgage foreclosure he might continue as tenant on the farm premises. Plaintiff claims that he also came to an agreement with Mrs. Hatch. It is admitted that he went to see Mrs. Hatch concerning this matter, but there is a dispute in the testimony as to what occurred between them. In part plaintiff testified of his interview with Mrs. Hatch:

"I told her I wanted to see about putting in wheat; that you (plaintiff's attorney) told me I shouldn't put any in until I saw the heirs of the estate. * * * She (Mrs. Hatch) said, go ahead and put in wheat. I have nothing to do with it; whatever the Blakes say will be all right, because I have an idea they will redeem the farm. I said I didn't want to put any wheat in and then lose it. She said, if we get the farm you can stay another year."

He further testified that he told Mrs. Hatch on this occasion:

"I was to leave 15 acres (in wheat), and have two-thirds of the crop, and she said that was the way her father always done business, have two-thirds of the crop. * * *

"*Q.* Did she object to your putting wheat in at any time?

"*A.* No, sir; she said there should be wheat on the farm.

"*Q.* Following that talk what did you do with reference to putting wheat in?

"*A.* I went to work and put it in. * * *

"*Q.* How many acres did you put out in the fall of 1934, after this talk with Mrs. Hatch?

"*A.* Thirty-eight acres."

Mrs. Hatch admitted the interview with plaintiff and that in substance he advised her that in view of the foreclosure proceedings he did not wish to rely wholly upon an arrangement with the Blakes but that he wanted also to see Mrs. Hatch because if the Blakes did not redeem he understood that Mrs. Hatch would be in control of the property when the wheat crop matured. Mrs. Hatch admitted that she was interested in having the farm rented to somebody and that plaintiff said to her in the course of his talk that if it was agreeable all around he would like to

stay there another year, and thereupon Mrs. Hatch informed him that so far as she was concerned it "would be all right." However, Mrs. Hatch also testified that she told plaintiff on this occasion that if he put the crop in "he would have to do it at his own risk." On redirect-examination this witness denied that she ever told plaintiff he could have the right to put in this wheat crop.

After the period of redemption expired the farm was sold to defendant John Post. Thereafter, and at the request of Mr. Post, plaintiff vacated the premises, and Post seems to have gone into possession. The record discloses that he plowed under 10 acres of the wheat which plaintiff had put in the fall before. Plaintiff thereupon started an injunction suit and sought the protection of the court incident to his having the right to harvest the wheat crop. By interlocutory orders the remaining 28 acres were preserved but finally Mr. Post was authorized by the court to harvest and market the crop. Thereafter the suit was heard and plaintiff sought a decree against each of the defendants for the value of his two-thirds of the wheat crop on the 38 acres, it being his claim that the yield on the 10 acres which was plowed under should be decreed to be the same per acre as the 28 acres harvested. After hearing the testimony the court dismissed plaintiff's bill of complaint as to defendant John Post; but decreed a money judgment in the sum of $150.98 against Mrs. Hatch as the administratrix of the estate of Levina Haynes, in whom title to the farm vested upon foreclosure. Plaintiff has appealed, claiming that the amount decreed to him was inadequate and that the decree should also run against Mr. Post. Mrs. Hatch on cross-appeal claims that the trial court was in error in holding that she, as administratrix of the Haynes' estate, was liable to plaintiff in any amount.

Review of this record sustains plaintiff's claim on this appeal that he is entitled to a decree against the defendant John Post for whatever amount is due plaintiff as his share of the wheat crop. The trial court arrived at a different conclusion on the theory that Mr. Post had purchased the farm in good faith and, the title having been conveyed to him without reservation, the wheat crop passed with the title to the land. The difficulty with this conclusion is that Mr. Post, under the testimony in this record, must be held to have purchased the property with actual or at least constructive knowledge of plaintiff's rights in the growing crop of wheat. Mr. Post lived in the immediate vicinity of the land on which the wheat crop was raised. He knew that plaintiff had been a tenant on this farm for a number of years. He also knew that plaintiff had put this wheat crop in while a tenant on the farm. And, further, plaintiff was in actual possession of the farm at the time Mr. Post purchased. Under the circumstances Mr. Post must be held to have taken title to the farm with knowledge of plaintiff's rights in the growing crop of wheat. *Stamp* v. *Steele,* 209 Mich. 205. To the extent that Mr. Post destroyed the crop or harvested the same he should be decreed to be liable to plaintiff.

As to the defendant Mrs. Hatch, the trial court limited recovery to the amount of plaintiff's interest in 15 acres of the growing crop of wheat. The trial court found, and we think the record fully sustains the finding, that Mrs. Hatch did in fact enter into an agreement which justified and authorized plaintiff in putting the wheat crop in on the mortgaged premises in the fall of 1934. But the trial court limited plaintiff's recovery to the amount of the crop raised on 15 acres. In this connection the court held that the agreement between plaintiff and Mrs. Hatch had to do with 15 acres only. We think this is a strained

and too restricted construction of the testimony. The conduct of plaintiff in preparing 38 acres for this wheat crop was certainly open and notorious. We find nothing in the testimony by which Mrs. Hatch sought to limit the sowing of wheat to 15 acres. The provision under which plaintiff had been occupying the farm as a tenant was that "At termination of this lease there shall be *at least* 15 acres of land seeded to wheat." Mrs. Hatch admitted on cross-examination that plaintiff told her "about the lease that he had with Blakes." Under this record Mrs. Hatch, as the administratrix of the Haynes' estate, should have been decreed to be liable to plaintiff for the full amount of his interest in the crop of wheat on 38 acres.

Defendants assert that foreclosure of the Blake mortgage wholly terminated the latter's rights and likewise all rights of plaintiff as a tenant holding under the Blake title. *Dayton* v. *Estate of Dakin,* 103 Mich. 65; *Ruggles* v. *First National Bank of Centreville,* 43 Mich. 192. Further that Post as grantee of the purchaser at the foreclosure sale acquired title to the crops growing on the land. *Ledyard* v. *Phillips,* 47 Mich. 305; *Scriven* v. *Moote,* 36 Mich. 64. In the absence of other controlling circumstances such would be the law of the case. But here the contentions cannot prevail because plaintiff has established an agreement with Mrs. Hatch under which he put in this crop of wheat on shares. Having permitted plaintiff to sow, Mrs. Hatch is bound to allow him to reap. Defendant Post was likewise bound to respect plaintiff's rights because the former purchased the land with constructive, if not actual, knowledge of the latter's rights as a cropper. In *Ruggles* v. *First National Bank of Centreville, supra,* 198, the court said:

"To preclude misapprehension, it may be added that there may be cases where the purchaser's conduct would require the court to consider him as having waived or abandoned all right to the crops, or as having estopped himself against asserting any. Such cases must be disposed of as they arise."

Plaintiff also seeks to recover the reasonable value of his services in plowing 13 acres while he was in possession of the farm. This he claims should be decreed to him at the rate of $3 per acre, totaling $39. We think this item was properly disallowed by the circuit judge. The only theory upon which it could be allowed to plaintiff is that he entered into a valid oral lease of the farm with Mrs. Hatch for a year. But whatever oral agreement plaintiff had with Mrs. Hatch was in 1934. The claimed lease of the farm for a year could not begin to run until January, 1935, at the expiration of the period of redemption. Therefore, the alleged agreement was one not to be performed within a year and, as held by the circuit judge, within the statute of frauds. 3 Comp. Laws 1929, §§ 13411, 13413. Plaintiff's claim that he is entitled to recover for this item on the same theory that recovery is allowed for emblements cannot be sustained.

The remaining question presented by plaintiff's appeal is the amount which should be decreed due him from defendants. We are of the opinion that the testimony fairly establishes the yield on the 10 acres plowed under by defendant Post would have totaled 200 bushels. This added to the 812 bushels harvested and threshed by defendant Post makes a total yield of 1,012 bushels. At the market price of 69½ cents per bushel the wheat alone totaled $703.34. To this should be added the value of the straw and screenings which the testimony reasonably shows

was $75. Thus the total of the crop would be $778.34. From this total should be deducted the reasonable cost of harvesting and threshing. The record does not contain testimony from which the cost of harvesting, threshing, etc., can be determined with exact accuracy. But we think a substantially just result can be reached on the basis of the figures adopted by the circuit judge. He found that the cost of harvesting, threshing, etc., of 812 bushels of wheat was $135.06. At this rate the cost incident to 1,012 bushels would be $168.30. Deducting this amount from the total value of the crop, $778.34, leaves a net crop value of $610.04. Of this plaintiff's two-thirds interest would be $406.70.

In arriving at the foregoing result we have disallowed plaintiff's contention that he should not be charged the cost of harvesting the crop because this was a wrongful act on the part of defendant Post. We have also disallowed plaintiff's claim of treble damages. Plaintiff brought this suit in equity. He is bound to do equity, and is entitled to ask no more than an equitable result. Defendant Post harvested the crop under the authority of the trial court while the litigation was pending. It would be highly inequitable to deny defendant Post the reasonable cost of harvesting and threshing the wheat under such circumstances. Further, the instant case does not come within the terms of the statute providing for treble damages. 3 Comp. Laws 1929, § 15124. The statute authorizes recovery of treble damages in actions at law only. At best such recovery is in the nature of a penalty which a court of equity will not ordinarily impose, at least not under the circumstances disclosed by this record.

In a cross-bill Mrs. Hatch sought to recover from plaintiff rental for his occupancy of the farm after

the period of redemption expired. It appears from her brief that she has abandoned this claim. Mrs. Blake sought and obtained moratorium relief which prolonged her right of possession beyond the period of redemption, and plaintiff was holding as a tenant of Mrs. Blake. For a valuable consideration Mrs. Hatch finally purchased from Mrs. Blake the rights asserted by the latter under the mortgage moratorium law. In the brief filed for Mrs. Hatch it is stated:

"Upon examining the authorities, defendant-appellee and cross-appellant frankly admits that there is a question in his mind whether upon the right of moratorium having been invoked and settlement made, the settlement so made did not bar all claims for the occupancy of the premises, as against the plaintiff herein."

It may also be noted that at the conclusion of her brief under the heading of "Relief Asked," no mention is made by Mrs. Hatch of this claim. We consider it abandoned and affirm the holding of the circuit judge wherein the asserted counterclaim was denied.

The decree entered in the circuit court will be set aside and one entered in this court in accordance herewith. Appellant will have costs of both courts.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.