GILES, receiver, &c. *vs.* COMSTOCK.

To render an eviction of a tenant a valid defence against the landlord's claim for rent, it must take place before the rent falls due.

And the rule is the same, although the rent is payable in advance, and the eviction occurs before the expiration of the period in respect to which the rent claimed accrues.

*Held,* therefore, that a landlord was entitled to recover a quarter's rent payable in advance on the first day of February; although before the quarter expired, a mortgage prior to the lease was foreclosed in chancery, the premises sold, and the tenant attorned to and paid the same rent to the purchaser.

Giles *v.* Comstock.

Where a decree of sale in a foreclosure suit provides, that the possession of the [271] premises shall be delivered to the purchaser on production of the deed, and a certified copy of the order confirming the sale, *quere*, whether the purchaser, before he complies with those provisions of the decree, can, on the strength of his deed alone, maintain an action for the possession against the mortgagor or any one holding under him.

Where the language of a written instrument has a fixed and ascertained meaning, the acts of the parties under the contract can not be received in evidence with a view to its construction.

On the 5th day of February, 1844, Giles, as receiver for the estate of William Post, deceased, having power to lease certain property of the decedent, and to collect the rents, rented store No. 162 Water-street, N. Y., to Comstock, for one year from the 1st of May, 1841. Upon which Comstock entered into a written agreement under seal, by which he agreed to pay the said Giles one thousand dollars of yearly rent, " payable quarterly in advance." The rent for three quarters had been paid, and this suit was brought in the superior court of the city of New-York, to recover for the quarter commencing February 1, and ending May 1, 1845.

Post, the intestate, had executed several mortgages, embracing the store No. 162, before his decease. One of these mortgages was foreclosed in chancery, and a sale of the premises in question took place, in pursuance of the decree, on the 28th day of March, 1845, at which Moses Taylor became the purchaser. The master's deed was executed to said Taylor, bearing date the 5th day of April, 1845, acknowledged the 29th of April, recorded the same day, and the order of confirmation was entered June 5th, 1845. The defendant was a party to the foreclosure suit.

On the 29th of April, 1845, Taylor called on Comstock, showed him his deed, and demanded the rent for the whole quarter, ending the 1st of May; and to influence him to pay it, told him he should not have a renewal of the lease for another year, if he did not: whereupon, Comstock paid Taylor the rent from February 1, Taylor giving him a lease for another year, and an indemnity for the payment of the rent for the current quarter. At the trial in the superior court, Oakley, C. J. held

[272] that under the facts proved the plaintiff could not recover, and the defendant had a verdict accordingly. After a new trial had been refused and judgment rendered, the plaintiff appealed to this court.

*H. S. Dodge*, for appellant.

*D. Lord*, for respondent.

TAYLOR, J. A contract to pay rent in advance is not illegal or void; but if so made, it may be distrained for, or an action maintained for it in debt or covenant. (*Conway* v. *Starkweather*, 1 *Denio*, 113; *Russell* v. *Doty*, 4 *Cowen*, 478.) This point has been very fully examined and clearly settled in England, as well as in this country. In *Bulkley* v. *Taylor*, (2 *T. R.* 600,) Buller, J. says, "in general the landlord can not distrain till the rent becomes due; but if the agreement be otherwise, I see no objection to it in point of law." In *Harrison* v. *Barry*, (7 *Price*, 690,) it was adjudged that a claim may be supported for rent stipulated by the lessee to be paid in advance; and such rent may be distrained for by the landlord. Baron Graham there remarked, that as to the objection to forehand rent, he saw no reason why it was not competent to include that in the distress; the anticipation of rent was matter of express stipulation. And it was admitted by the counsel, *arguendo*, that an action of debt or covenant might have been maintained for such rent in advance against the tenant. There can be no doubt but that the right to sue for the rent arose, as soon as the covenant was broken by non-payment after rent became due. (*Russell* v. *Doty*, 4 *Cowen*, 578; *Nichols* v. *Dusenbury*, 2 *Comst.* 286; *Gilb. on Rent*, 25; *Woodfall, L. & T.* 238.)

The force of this contract of the lessee to pay in advance, is sought to be avoided by the previous practice of the parties; which, as appears by the testimony, was not in accordance with the terms of the lease; but the rent had before, in fact, been paid at the end of each quarter, and of course after it had accrued by occupation of the premises. But I apprehend the

authorities relied upon do not reach the case before us. In *French* v. *Carhart*, (1 *Comst.* 96,) certain often recognized [273] rules of construction were quoted and approved by his honor, Judge Jewett, and among the rest, that when the words of a grant are ambiguous, the court will call in the aid of the acts done under it, as a clue to the intention of the parties. But the terms of this lease are not at all ambiguous; there is no doubt about their meaning; and it would be adopting an entire new rule to affirm that the specified time of payment of money is not, according to the intention of the parties, whenever the creditor shall not demand, or the debtor shall neglect to pay until some time after payment became due. There is here no room for the operation of any rule of construction which arises out of doubtful or ambiguous terms of a written contract.

The case of *Smith* v. *Shepard*, (15 *Pick.* 147,) approaches nearer the one before us, in its circumstances, than any other which I have been able to find. In that case as in this, the rent was payable in advance. There, however, the mortgagee took possession of the property, after condition broken, for the purpose of foreclosure, as he had a right to do, by force of a statute of that commonwealth, which gave him a lawful possession, and which the court decided operated as an ouster of the tenant. The entry was made by the mortgagee on the *first day* of the quarter, and the day on which the rent was made payable in advance by the lease. The court decided that under these circumstances the plaintiff could not maintain his action; and Shaw, J. places the decision upon the ground that " as to the quarter's rent due by covenant in advance, the defendant had the whole day to make the payment in advance;" that is, the whole of the first day of the quarter ensuing; " but during the day the mortgagee entered and ousted him, and this was a good excuse." But would it have been a good excuse if the entry of the mortgagee had been delayed until the next day? It is not so decided in that case, but the contrary inference is clearly deducible from the learned judge's remarks. In the present case, therefore, the breach of the covenant for non-payment of

rent by the defendant, raised a perfect right of action on behalf of the plaintiff.

[274] Beyond all doubt the foreclosure of the mortgage and the sale and conveyance of the demised premises, extinguished the title held by the receiver, and divested him of all right to receive any rent accruing after the current quarter. But it is not so clear, that Comstock was justified in attorning to Taylor on the 28th day of April, on the ground of a rightful eviction. Taylor could claim nothing, and could exercise no ownership over the property except such as he acquired by virtue of the decree and sale. That decree gave Taylor the possession of the premises on production of the master's deed, and a certified copy of the order to confirm the sale. The deed alone, without the order and before confirmation, was sufficient to sustain a suit in ejectment against a wrongdoer, for if there were any doubt of such a proposition, says Judge Cowen, all question would be removed by the doctrine of relation; the sale and deed being afterwards confirmed, by an order, this related to the date of the deed, thus overreaching the claim of a *mere intruder* into the premises. (*Fuller* v. *Van Geesen,* 4 *Hill,* 172.) But no where do I find that the courts have gone the length of sustaining an eviction of one in rightful possession before the time fixed by the decree for the surrender of possession. The purchaser is not injured by the delay, for he purchased with a full knowledge of the rights of the mortgagor, and those claiming under him, and he has his remedy for the accruing rent.

According to the terms of the decree under which the purchaser claimed, the parties to that foreclosure suit, who might be in possession of the premises sold, were ordered to deliver possession to the purchaser on production of the master's deed and a certified copy of the order confirming the report of sale after the same should have become absolute. Under this decree, it seems to me that the defendant, being a party to that suit, and representing the owner of the equity of redemption, was entitled to hold possession, until by the terms of the decree he was ordered to surrender it, and although an eviction by process of law is not necessary to justify the attornment of the tenant;

yet for his justification he must be able to show that the claimant by paramount title has a legal and equitable right to the possession of the premises in presenti. (*Greenvault* v. [275] *Davis,* 4 *Hill,* 646, *and cases there cited.*) Strictly speaking, the attornment in this case, is not within the exceptions in the statute. The only decree pursuant to which the premises could be supposed to be surrendered, did not order possession to be given to the purchaser until some weeks after the termination of the tenancy.

The doctrine every where running through the books is that to render eviction from the premises a valid defence, it must have taken place before the rent became due. In note 2d to *Salmon* v. *Smith,* (1 *Saund.* 204,) it is said that to occasion a suspension of the rent there must be an expulsion or eviction of the lessee ; and the plea must state his eviction or expulsion and keeping him out of possession *until after the rent became due.*" So in *Paige* v. *Pain,* (*Styles,* 432.) " If there be an actual expulsion of the tenant from the whole or a part, by the lessor, *before the rent became due,* it bars the claim for rent." (*See also Timbel* v. *Bullock, Styles,* 446.) " If the tenant be evicted from the lands demised to him by a title paramount, *before the rent falls due,* he will be discharged from the payment of rent." (2 *Roll. Abr. tit. Rent,* 6.) And Chancellor Kent affirms the same doctrine, and quotes the above authorities with approbation. (3 *Comm.* 37.) On the other hand, I do not find a single case which conflicts with this doctrine, that to bar the action for rent, the eviction must take place before the rent becomes due ; and whether it become due by special agreement in advance or without such agreement by the expiration of the term, does not vary the rights of the lessor. The question is, when did the rent become due, and the right of action arise? " and that rent," says Judge Sutherland, (*Russell* v. *Doty,* 4 *Cowen,* 581,) "surely must be due, for which a landlord has a right to distrain."

Taylor, the purchaser of the mortgaged premises, under the decree of foreclosure had no right whatever to the rent which had previously accrued, and in *Astor* v. *Turner,* (11 *Paige,* 436,) the chancellor seems very clearly to imply, that under a decree

like this the purchaser can not claim the rent, until after the order for confirmation. His words were "the purchaser was [276] not entitled to the rent which would become due before his right to the possession of the premises was to commence. If the purchaser had been entitled to the *immediate possession* by the terms of the decree and the condition of sale, the rent which fell due the next day would have belonged to him." In that case the sale was made on the 31st of October, and the rent became due the 1st November. The rent for the quarter preceding was decided to belong to the owner of the equity of redemption, even if the order to confirm the master's report had been entered immediately.

The judge erred in charging the jury that the title derived to the purchaser under the mortgage foreclosure and master's deed, the entry and demand of rent under that deed as shown in evidence, and the payment to him by the defendant thereupon, were sufficient in law to bar the plaintiff's right of action; and the judgment below must be reversed.

Judgment reversed.