(23 Misc. Rep. 348.)

## STEIN v. RICE.

.(Supreme Court, Appellate Term.   April 27, 1898.)

1. TENANT—ABANDONMENT OF PREMISES—DELAY.

In cases where a tenant has a right to abandon the demised premises on account of their untenantable condition, he must exercise his option within a reasonable time after discovering the fact.

·2. RESCISSION OF LEASE—FRAUD.

At the time when defendant leased plaintiff's seashore cottage for the season of 1897, the latter's agent knew that for several years past the water supply had fallen off during August, but had·no reason to anticipate an actual water famine, such as occurred that year. In renting the cottage, he made no reference to water supply. *Held*, that the evidence would not sustain a conclusion of fraud, such as to justify a rescission of the lease.

.3. ACTION FOR RENT—DEFENSES—UNLAWFUL EVICTION.

An unlawful eviction is not a defense to an action brought for the recovery of rent due and payable before the eviction, even though it is payable in advance, and the eviction occurs before the expiration of the period in respect of which the rent claimed accrues.

Appeal from Eleventh district court.

Action by Helene Stein against Isaac L. Rice.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIE-·GERICH, JJ.

Nathan Bijur, for appellant.

Lester & Mettler, for respondent.

GILDERSLEEVE, J.   Plaintiff, through her husband and agent, rented her cottage at Avon by the Sea to the defendant for the ·summer season of 1897. The rent was to be $500, one half payable on July 1st, and the other half on August 1st. Defendant, before hiring the place, had been assured by Mr. Stein, the plaintiff's husband and agent, that the place was healthy. The defendant's wife, Mrs. Julia Rice, had visited the place, and found it satisfactory. She saw two bath rooms, one on the second floor and one on the third floor, and concluded that the water supply was sufficient, although nothing on this subject had been said either by the ·defendant or his wife, or by the plaintiff or her husband, or her caretaker, Leigh, who showed the defendant's wife over the place. ·On July 1st the defendant's family moved into the cottage, and on the same day defendant paid his first installment of rent (i. e. $250). Upon so moving in, they found that, owing to plaintiff's failure to pay the water tax or rent, no water had been turned on. The caretaker, Leigh, got some water for them in cans or pails from a neighboring hydrant; and on July 3d the water was turned on, as plaintiff had paid the water rent out of the money paid to her by defendant as the first installment of rent. There does not seem to have been any more trouble until towards the middle of August, about the 11th or 12th of that month, when the supply began to fall off, and on or about the 14th of August a general water famine set in ·at Avon by the Sea. The defendant's family was supplied to a certain extent with water from the hydrant, which water was brought in cans or pails by the servant, Cora Whitiker, and by

Leigh, the plaintiff's caretaker. The defendant's family was put to very considerable inconvenience by reason of the water famine, although the evidence does not warrant a finding that the health of the family was injured. In fact, Mr. Rice particularly says that none of the family were sick, and that he was merely apprehensive of sickness, but that there was no positive sickness. It also appears that they had enough water to drink, but not sufficient for washing or for cooking, during these three days of famine (i. e. from August 14th to August 17th). Mrs. Rice swears that the closets were in a frightful condition, but it does not appear that they could not have obtained sufficient water from Leigh, or even from the ocean, to have kept the closets clean. On the 17th of August the defendant vacated the premises, and plaintiff brought this action to recover the balance of $250, due on August 1st, on the agreed rent of $500 for the season. It further appears that on the 18th of August, the day after defendant had vacated the premises, the water company attached another pump to the water plant, and gave a better supply to all of the houses, including the one in question.

Defendant claims that the plaintiff's agent suppressed a material fact, in not letting defendant know of the shutting off of the water previous to July 3d, at the time of the making of the agreement, and also in not warning defendant of the likelihood of an insufficient water supply in August. The first objection must be held to have been waived, since the defendant continued in possession of the premises for some six weeks after the water had been turned on again, on July 3d. A tenant must exercise his option to abandon within a reasonable time after discovering the untenantable condition of the premises. See Copeland v. Luttgen, 17 Misc. Rep. 604, 40 N. Y. Supp. 653.

As to the second point, the principle of law may be stated as follows, viz.: Where the lease contains no covenant on the part of the lessor that the premises are in good condition, or that he will put or keep them so, a covenant may not be implied that the dwelling is without inherent defects, rendering it unfit for residence. But where the lessor, knowing at the time of the making of the lease of the existence of the secret defects or conditions rendering the building unfit for residence, fraudulently represents to the lessee that they do not exist, or fraudulently conceals their existence, and the lessee abandons the house because thereof, he will not be held liable for the rent subsequently accruing. See Daly v. Wise, 132 N. Y. 306, 30 N. E. 837. In the case at bar it appears that, for some years previous to the letting of the premises to the defendant, there had been a falling off of the water supply at Avon by the Sea during the month of August; but the evidence does not warrant a finding that such usual falling off of the water supply amounted to such a water famine as that which occurred in August, 1897. It is not denied that plaintiff's agent knew of this usual decrease of the water supply during the month of August, and that he said nothing on the subject to the defendant. On this point he swears:

"Q. How many seasons did you pass at Avon in this cottage? A. Three seasons. Q. Did the water supply ever totally run out? A. Never. Q. Was

51 N.Y.S.—21

there ever a lowness in the water supply? A. There was sometimes. Q. Just state how great it was. A. During the middle of the day, during the month of August, the water is ordinarily low, and sometimes run down so it would not get up to the third floor, where we had a sink; but during the mornings, evenings, and nights there was always a sufficient supply of water."

He swears on cross-examination that he never knew the water to give out on the second floor, or get low on the bottom floor. The caretaker, Leigh, swears:

"Q. Generally, during the month of August, the water in any of those houses does not go beyond the first floor? A. No; not in the middle of the day. At nighttime it does better. Q. Had this house the same accommodations as any of the houses in that place? A. Yes."

The defendant himself swears:

"Q. Did they [plaintiff's agents] make any efforts to remedy it [the water famine]? A. It could not be remedied. It was the trouble in the water supply of the whole town."

We do not think that the evidence will sustain a conclusion that there was fraud which would justify a rescission of the lease, or that the plaintiff or her agents should have foreseen the water famine of August, 1897, and warned defendant thereof. Defendant particularly admits there was no actual representation on this point, for he thus testifies:

"Q. Did the plaintiff or Mr. Stein ever represent to you that the water supply was continuous in volume throughout the summer? A. I do not think so."

The law will not imply a covenant or agreement in the lease as to conditions not under the control of the lessor, and with reference to which, he and the lessee being ignorant, neither could be supposed to have contracted. The lessee of real property must run the risk of its condition, unless he has an express agreement on the part of the lessor in relation thereto. See Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126.

The defendant also raises the point that the husband represented himself as the owner of the property, and that this constituted a fraud upon the defendant. The plaintiff's husband, however, explicitly denies this. He is asked:

"Q. Did you not state to Mr. Rice that this was your cottage? A. No; I did not. I told him it was the cottage of my wife."

Without stopping to consider the value of the point, even assuming that the statement was made, it is sufficient to say that the justice must be deemed to have found the fact in favor of the plaintiff, and his conclusion will not be disturbed on appeal.

The defendant also refers us to the case of Smith v. Marrable, 11 Mees. & W. 5, an English decision of 1843, where it was held that the tenant was justified in leaving a furnished house infested with bugs. We do not regard this case as very applicable to the case at bar, in the first place; and, in the second place, the correctness of the doctrine there laid down has been questioned by our court of appeals in the cases of Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126, and Daly v. Wise, 132 N. Y. 306, 30 N. E. 837.

There is another aspect of the case at bar which merits notice. Even should we assume that, although there was no fraud, the failure of

the water supply amounted to a constructive eviction, still an unlawful eviction is not a defense to an action brought for the recovery of rent due and payable before the eviction. See Cole v. Sanford, 77 Hun, 199, 28 N. Y. Supp. 353. By the terms of the agreement in question, as we have seen, the balance of rent (i. e. $250) was due and payable on August 1st, whereas the supposed eviction did not occur until August 17th. The rule is that, to bar an action for rent, the eviction must take place before the rent becomes due; and whether it became due, by special agreement, in advance, or, without such agreement, by the expiration of the term, does not vary the rights of the lessor. See Gugel v. Isaacs, 21 App. Div. 504, 48 N. Y. Supp. 594 (Van Brunt, P. J.). An eviction on the 17th of the month is no defense to an action for rent which accrued on the 1st of said month. See Johnson v. Barg, 8 Misc. Rep. 307, 28 N. Y. Supp. 728. In the case of Giles v. Comstock, 4 N. Y. 270, the court of appeals held that, to render an eviction of a tenant a valid defense against the landlord's claim for rent, it must take place before the rent falls due; and the rule is the same although the rent is payable in advance, and the eviction occurs before the expiration of the period in respect to which the rent claimed accrues. Giles v. Comstock, 4 N. Y. 270. This is an old decision, but the rule there stated does not seem to have been modified by any subsequent adjudication. See Gugel v. Isaacs, supra; also, Cheesebrough v. Lieber, 18 Misc. Rep. 459, 42 N. Y. Supp. 1122.

There is no other point of sufficient importance to require discussion. For the reasons above stated, the judgment is affirmed, with costs. All concur.