Isidore Sokolow, Plaintiff, *v.* Isaac Meyer, Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, February 28, 1931.

Morrison & Schiff [Leon Brof of counsel], for the plaintiff.

Bauerdorf & Taylor [Howard C. Taylor of counsel], for the defendant.

WHALEN, J. This action is brought to recover rent alleged to be due under a written lease made between the Winthrop Realty Co., Inc., as landlord, and the defendant, as tenant, covering a store forming a portion of the premises on the northerly side of Seventy-fourth street, between Broadway and Amsterdam avenue. The owner in fee is the 201 West Seventy-fourth Street Corporation, which leased the entire premises to the 2120 Broadway Corporation, which in turn leased the entire premises to the Winthrop Realty Co., Inc. The lease from the Winthrop Realty Co., Inc., to this defendant was later assigned by the Winthrop Realty Co., Inc., to the Pristol Operating Co., Inc. Thereafter, and on or about June 10, 1930, the Pristol Operating Co., Inc., assigned the claim for rent involved in this action against this defendant to the plaintiff herein.

On May 1, 1930, there was due from the Winthrop Realty Co., Inc., and the Pristol Operating Co., Inc., to the 2120 Broadway Corporation for arrears of rent and taxes, the sum of $33,206.49. On or about May 24, 1930, the 2120 Broadway Corporation instituted summary proceedings to dispossess the Winthrop Realty Co., Inc., the Pristol Operating Co., Inc., and all the undertenants, including this defendant, to recover possession of the said premises because of default in the payment of the sums above mentioned, and a final order in said proceedings awarding possession to the petitioner was signed on June 5, 1930.

On June 1, 1930, there was due from the 2120 Broadway Corporation to the 201 West Seventy-fourth Street Corporation a total of $66,507.40, for rent, water charges, taxes, mortgage interest and installment on account of principal of mortgage. On or about June 2, 1930, summary proceedings were instituted by the 201 West Seventy-fourth Street Corporation against the 2120 Broadway Corporation, Winthrop Realty Co., Inc., Pristol Operating Co., Inc., and all the undertenants, including this defendant, to recover possession of the premises because of the non-payment of the amounts above mentioned, and in this proceeding a final order was entered June 17, 1930, awarding possession of said premises to the 201 West Seventy-fourth Street Corporation. No warrant

was issued in the first proceeding brought by the 2120 Broadway Corporation. A warrant was issued in the second proceeding brought by the 201 West Seventy-fourth Street Corporation on July 2, 1930. None of the lessees or undertenants mentioned herein actually surrendered possession of the premises during the months of May and June, 1930. On July 23, 1930, this defendant, still being in possession of his store, at the demand of the 201 West Seventy-fourth Street Corporation, paid to the 201 West Seventy-fourth Street Corporation the sum of $958.34, the full amount of the claim for rent for the months of May and June, 1930, without any notice or knowledge of the assignment of the claim of the Pristol Operating Co., Inc., to this plaintiff.

The lease of the Winthrop Realty Co., Inc., to this defendant contained an express covenant of quiet enjoyment. The lease between the 201 West Seventy-fourth Street Corporation and the 2120 Broadway Corporation contained a provision that if the rent reserved or any part thereof, or any sum of money due and payable as rent, should not be paid on the day whereon it was due and payable, it should be lawful for the lessor, at his option, to then enter into the demised premises and to remove all persons therefrom and the same again to re-enter, repossess and enjoy as of its first and former estate.

Most of the facts were stipulated. In addition to the stipulated facts, the defendant testified, over the objection and exception of the plaintiff, that in the early part of June, 1930, after he had been served with the petition and precept in both of the summary proceedings above mentioned, the president of the 201 West Seventy-fourth Street Corporation called to see him and said: " You have nothing to worry about, Mr. Meyer, I just came in to check up on the rent you are paying and the length of the term of the lease, and I am here to protect my tenants, to see that none of my tenants shall be disturbed," and the defendant further testified: " Mr. Wuers [president of 201 West Seventy-fourth Street Corporation] asked me if I owe May rent — Mr. Wuer ssaid he is just checking up — he is here to protect the tenants, and he is not going to disturb his tenants * * * he asked me if I paid the rent for May and I said ' No,' and he said ' Don't pay it.' In July I paid Mr. Wuers the May and June rent."

Neither the 2120 Broadway Corporation, nor the Winthrop Realty Co., Inc., nor the Pristol Operating Co., Inc., paid the rent for May or June, 1930, to the 201 West Seventy-fourth Street Corporation, the owner of the fee. The undertenant, the defendant herein, since July, 1930, has paid the rent at the same sum he previously paid to the 201 West Seventy-fourth Street Corporation

and is still in possession. The defendant, in his answer, pleaded these facts as a defense and also as a counterclaim, but in his brief the defendant disclaims any desire to recover any damages, merely desiring to have the payments made by him offset against the claim of this plaintiff.

The question of law thus presented is whether or not the payment by this defendant to the owner of the fee of the rent for the months of May and June, 1930, is a valid defense against the claim of his immediate lessor which has been assigned to this plaintiff. It is strange that there is no recent authority on this subject. The defendant cites an old case (*Peck* v. *Ingersoll*, 7 N. Y. 528 [1852]), in which such a defense was held to be valid on an almost identical state of facts, although in that case no summary proceedings had been instituted. There the court said: " The original lease between Mrs. Dunscombe and the plaintiffs contained a covenant of re-entry on the non-payment of rent by the lessees for ten days after it fell due. The jury have found that the ground rent was due to Mrs. Dunscombe by the defendants, the lessee's tenants; and the only question of any importance, is whether they were justified in making such payment and entitled to have the amounts applied in discharge of their rent due the plaintiffs.

" It has been frequently decided upon the most obvious principles of justice that if an undertenant is compelled to pay rent to the head landlord he may deduct it from the rent due to his immediate lessor; or if the sum paid exceeds that due to the lessee the tenant may, in an action of assumpsit for money paid to the use of the lessor, recover the excess (1 *Smith's Leading Cases*, * * * ). This privilege upon the part of the undertenant exists, if there be in the head landlord a legal right by the exercise of which the person who pays may be damnified unless he satisfies it. (1 *Leading Cases*, 203.) It is not necessary that the head landlord should distrain or even demand the money or commence or threaten a suit. The right to enforce his claim in this way will make the payment by the undertenant compulsory within the principle of the decisions.

" In this case the original lessor had, as we have seen, a right of re-entry. The undertenant was authorized to protect his possession against the exercise of this right by paying the rent to the head landlord. Such a payment is not voluntary, and there is no question but that it was made by the defendants in good faith, with an honest purpose, to shield themselves from damage. I think the judgment of the common pleas should be affirmed."

It will be observed that in the quoted case it was held that the undertenant was justified in paying the rent to the owner of the fee, merely because the owner of the fee had the right of re-entry. No summary proceeding had been instituted, nor any legal action of any kind. The lease involved in this action contains a right of re-entry, although this is a right that is seldom, if ever, exercised at the present time, except in connection with a summary proceeding or suit in ejectment. We have had the summary dispossess proceeding since 1820 (Laws of 1820, chap. 194, § 3), and it was in force at the time of the decision in *Peck* v. *Ingersoll.*

The case of *Michaels* v. *Fishel* (169 N. Y. 381) contains a discussion of the meaning of a right of re-entry in a lease. There it is said (at p. 388): " Re-entry is the resumption of possession pursuant to a right reserved when the former possession was parted with. It was a remedy given by the Feudal Law for non-payment of rent, but so ancient that its origin has never been traced. ' If,' runs the old law, ' a man makes a feoffment, gift or lease reserving rent, with a condition that if the rent be behind it shall be lawful for the feoffor and his heirs to re-enter; in those cases if the rent be behind and not paid according to the deed, the feoffor or lessor may enter into the lands and hold them in his former estate, because the estate was not absolute but defeasible by the non-performance of the conditions. * * * The rigor of the rule of forfeiture was in the course of time modified by treating the condition as a covenant of indemnity, as well as by borrowing from the civil law the remedy of distress and making it a duty, before exercising the right of re-entry, to search for property to distrain. * * *

" In 1846 ' distress for rent ' was abolished in this State, but the remedy of re-entry still survives and is well known to the common law. (Laws of 1848, chap. 274.) It may be exercised only when the right is expressly reserved in the lease, for without such reservation the remedy of the lessor under the lease and independent of the statute is confined to an action on the covenant. The method of exercising the right is by an action of ejectment to recover possession of the demised premises. At common law, the right to re-enter, except when entry can be made without force, is simply the right to maintain an ejectment, and we find no statute which has changed the rule. When lessors reserve the right ' into and upon the said premises to re-enter and * * *. the same to have again * * * as in their first and former estate,' their words point directly toward re-entry by ejectment and do not even suggest statutory dispossession. The parties may have had that subject in mind when they said, in another part

of the lease ' nothing herein contained shall be construed or be deemed to be a waiver * * * of any right or remedy in law or otherwise,' but not when they reserve the right to re-enter, which means the recovery of possession in one way only * * * Hence, when the lessors reserve the right to re-enter and to have, repossess and enjoy the premises as in their former estate, the presumption is that they meant re-entry by ejectment and that if they desired to reserve a more extensive right they would have said so in express language."

There has been no case called to my attention where an under-tenant has paid rent to the owner of the fee under the threat of a dispossess proceeding by the owner of the fee. A threat of dis-possession by means of summary proceedings, however, is more forcible than a threat of ejectment under a right of re-entry. The text writers give expression to the same rule based on the decision in *Peck* v. *Ingersoll*. (1 McAdam Landl. & Ten. [4th ed.] 691; 1 Tiffany Landl. & Ten. p. 1087; 1 Underhill Landl. & Ten. p. 544; 36 C. J. § 1264.)

*Peck* v. *Ingersoll* has not been modified in any way, and, in fact, it has been cited, so far as I have been able to discover, only three times, namely, in *Matter of Strasburger* (132 N. Y. 128 [1892]); in *Browning* v. *Chadwick* (30 Misc. 420 [1900]), and in *Blank* v. *La Montagne* (123 id. 238 [1924]).

In *Matter of Strasburger*, one Strasburger was a lessee of a building that he sublet to A, and A sublet various portions to various subtenants. On September 17, 1884, a committee of the person was appointed for Strasburger, who had been adjudged incompetent. On November 1, 1884, Strasburger's lessees paid a quarter's rent in advance. The committee did not pay the quarter's rent to the fee owner and all the lessees and undertenants were dispossessed on November 20, 1884. Thereafter, Strasburger's lessee, A, sued his committee for damages, and it was held that they could recover only the amount of rent they had paid in advance. In its opinion the court said: " The appellants [Strasburger's lessees] could themselves have protected their possession by paying the superior landlord the rent due him. (*Peck* v. *Ingersoll*, 7 N. Y. 528.) "

In *Browning* v. *Chadwick* (30 Misc. 420, Appellate Term, First Department, 1900) *Peck* v. *Ingersoll* is cited with approval, but the facts in that case are distinguished from those in *Peck* v. *Ingersoll*.

In *Blank* v. *La Montagne* (123 Misc. 238, New York Special Term, 1924) there was an action by a subtenant against the lessee for specific performance of a clause in a lease for plaintiff's quiet and peaceable possession of the premises, upon the ground that

the lessee had failed to pay the rent and that the owner of the fee threatened dispossess proceedings. The complaint was dismissed in this action for the reason that plaintiff had an adequate remedy at law for breach of contract, citing *Peck* v. *Ingersoll* (7 N. Y. 528).

The plaintiff has cited a number of cases which he claims sustain his contention that the plaintiff herein, as assignee of. the rights of the Winthrop Realty Co., Inc., and the Pristol Operating Co., Inc., has a right to recover from this defendant the rents for the months of May and June because during these two months there was no actual eviction or constructive eviction of this defendant from the premises, and that the plaintiff's assignor had the legal right to collect these rents that fell due on May first and June first, because of the fact that the tenant's possession was not actually interfered with. The plaintiff cites: *Giles* v. *Comstock* (4 N. Y. 270); *Edgerton* v. *Page* (20 id. 281); *Whalin* v. *White* (25 id. 462); *Mack* v. *Patchin* (42 id. 167); *Roe* v. *Conway* (74 id. 201); *Ginsberg* v. *Sherlock* (221 App. Div. 586).

These are all cases where a mortgage on property was foreclosed and the purchaser on the foreclosure sale came in and demanded rent from the tenant in possession. They held that the owner of the fee or the owner of the equity of redemption or the person who is entitled to collect the rents prior to the foreclosure had a right to collect all the rent that fell due up to the time that a referee's deed was delivered and an order of the court confirming the sale was entered. These cases are in a class by themselves and do not interfere with the rule laid down in *Peck* v. *Ingersoll*.

In *Grattan* v. *Tierney Sons,  Inc.* (226 App. Div. 811, Second Department, 1929), cited by the plaintiff, there is a dictum which would seem to have an implication favorable to the defendant in the present case. In a brief memorandum opinion the court there said: " The issuance of the warrant in the summary proceedings, although it terminates the relation of landlord and tenant so far as the written instrument involved herein is concerned, does not constitute an eviction as the warrant may never be executed, and unless it be executed there will be no actual eviction; *and unless by way of avoiding its execution the plaintiff submits by valid attornment to the owner of a paramount title having the right to have the warrant executed, there is no constructive eviction.*"

To resume the consideration of the facts in the present case, it appears that on June 2, 1930, summary proceedings had been instituted by the 201 West Seventy-fourth Street Corporation, as owner of the fee, against all the lessees and undertenants, including this defendant, to recover possession of the premises involved by reason of the non-payment of rent for May and June, 1930, and

on June 17, 1930, a final order was entered, awarding possession of the premises to the 201 West Seventy-fourth Street Corporation. In this proceeding a warrant was issued on July 2, 1930. This defendant, therefore, had notice that his possession of his store was endangered. At the time he paid the rent for May and June, 1930, to the owner of the fee, the owner of the fee had a warrant which, if enforced, would oust him from possession. Under these circumstances, it seems to me that the payment made by this defendant was under compulsion, and that he acted in good faith in paying the rent to the owner of the fee. It may be that if there were any reason to suppose that the undertenant acted in bad faith in paying the rent to the owner of the fee, such a payment would not be a defense, but it would be inequitable to hold that an undertenant would have to submit to actual ouster and be relegated to his action for damages against a lessor, perhaps insolvent. It seems to me that an undertenant in such a position would have his choice of either paying the rent due to the owner of the fee in order to protect his possession, or of giving up possession or submitting to dispossession and then seek to hold his lessor responsible in damages. So long as the undertenant acts in good faith, I am of the opinion that his payment of the rent to the owner of the fee is a valid defense. To hold otherwise would be to violate the most ordinary principles of justice and common sense. In this case there is no evidence whatever that this defendant acted fraudulently or collusively. On the contrary, he seems to have acted in entire good faith.

I hold, therefore, that the proof of this payment is a valid defense in this action, and that the complaint must be dismissed on the merits.