**In re KHARISMA JEWELRY, INC., Debtor.**

**Bankruptcy No. 891–83775–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

March 28, 1994.

---

David B. Lubash, Lubash & Lubash, Jamaica, NY, for creditor Norman Beer.

Robert P. Herzog, New York City, for trustee.

Allan B. Mendelsohn, Syosset, NY, Chapter 7 Trustee.

## DECISION AND ORDER ON MOTION OBJECTING TO CREDITOR'S CLAIM

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court[1] upon a motion ("Motion") by the chapter 7 Trustee

---

1. The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1), and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by

("Trustee"), who seeks to expunge the unsecured claim filed by creditor Norman Beer ("Creditor").

For the reasons set forth below, the Court holds that the Motion objecting to the Creditor's claim is **GRANTED** and the Creditor's claim in the amount of $60,000 is **EXPUNGED.**

### RELEVANT FACTS

An involuntary petition for bankruptcy relief under chapter 7 of title 11, United States Code ("Bankruptcy Code") was filed against Kharisma Jewelry, Inc. ("Debtor") on August 21, 1991 and an order for relief was subsequently entered.

In a proof of claim dated July 7, 1992 ("Proof of Claim"), Creditor alleges he is owed $60,000 pursuant to a loan made to Debtor in 1985 ("Loan"). Creditor annexed to the Proof of Claim copies of the four separate checks, each for $15,000, which cumulatively made up the Loan. The four checks were dated June 3, 1985, June 5, 1985, June 13, 1985 and July 25, 1985. Also annexed to the Proof of Claim as tangible evidence of the Loan was a handwritten acknowledgement of receipt of the Loan by Debtor's president ("Handwritten Receipt"). Debtor's president, Gary Beir, is Creditor's brother (the different spelling of the surnames was not explained). The Handwritten Receipt provides:

This will acknowledge the receipt by Kharisma Jewelry Inc of 4 (four) loans from Norman Beer of $15,000 (fifteen thousand dollars) each, for a total of $60,000.00 (sixty thousand dollars).

The loans are dated and received on:

(1) June 3, 1985
(2) June 5, 1985
(3) June 13, 1985
(4) July 25, 1985

/s/ Gary Beir, Pres
GARY BEIR president

Handwritten Receipt, dated July 25, 1985.

the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A) and (B) of title 28.

Neither Creditor nor the Loan was mentioned in the list of creditors that Debtor filed subsequent to the involuntary bankruptcy petition. Debtor's actual corporate books and records are unavailable.[2]

As stated, Creditor filed the Proof of Claim on July 10, 1992. By letter to the Trustee's attorney, dated March 23, 1993, Creditor for the first time refers to an oral agreement between himself and his brother, Debtor's president. Creditor writes that he and his brother had a "verbal agreement ... that the $60,000 would be returned to [Creditor] upon sale of [Debtor's] business." Letter of Creditor to Robert P. Herzog, Esq., Trustee's attorney, dated March 23, 1993.

On or about May 13, 1993, the Trustee filed a Notice of Hearing Objecting to Creditor's claim pursuant to Bankruptcy Rule 3007. *See* Fed.R.Bankr.P. 3007 (1994). The Trustee asserted that: (a) the creditor is an insider of Debtor as defined in the Code and, therefore, said claim should be subordinated and transferred to the Trustee; (b) if the Loan was in fact returnable at the sale of the business, a sale did not take place; and (c) the creditor's claim is barred by the statute of limitations set forth in New York's Civil Practice Law and Rules section 213(2). *See* N.Y.Civ.Prac.L. & R. § 213(2) (McKinney 1994). In support of his third argument in opposition to Creditor's claim, the Trustee alleges that each $15,000 check which made up the Loan was itself a demand loan, since no term was agreed upon, and that the statute of limitations allows an action upon a demand loan for up to six years. Thus, the Trustee argues, Creditor may not seek to enforce the Loan as it was made over eight years ago, in 1985.

In opposition to the Trustee's Motion, Creditor again states that the terms of the Loan were that the $60,000 would be repaid upon Debtor's sale of its business; however, these agreements were oral and were not

memorialized in any writing between the parties. Creditor raises the oral agreement to refute the Trustee's assertion that Creditor's claim is barred by the statute of limitations. Creditor hopes to show that the oral agreement between his brother and himself constituted a condition precedent to an action brought to enforce the loans, which condition had the effect of tolling the limitations statute.

On August 26, 1993, the Court heard oral argument upon the Motion. The Court also heard testimony from Creditor, Norman Beer, regarding the circumstances surrounding the loan transactions; Creditor stated:

"[Gary Beer, Creditor's brother and President of Debtor] asked me, he needed some money for the business. He asked me if I would help out. The conditions were when the business was sold, he built the business up and the business [sic] was sold, he would repay me."

Transcript of August 26, 1993 hearing (hereinafter, "Tr.") at 18.

In his legal brief, the Trustee claims that the oral collateral agreement is barred by the parol evidence rule: Since no term for the Loan was stated in the Handwritten Receipt, no collateral agreement providing a term for the Loan is admissible, and therefore the Loan is repayable on demand. Any claim for relief pursuant to a demand instrument accrues upon its date or, if no date is stated, on the date of issue. The Trustee asserts that since the Loan was entered into in 1985, any claim for enforcement was barred after 1991.

## DISCUSSION

The Court will first address the Trustee's argument that the Creditor's attempt to enforce the Loan is barred by the statute of limitations.

■ In New York, an action for enforcement of a contractual liability to return loaned funds must be commenced within six years. N.Y.Civ.Prac.L. & R. § 213(2) (McKinney 1994). A cause of action against

---

**2.** At the hearing before the Court upon the Motion, held on August 26, 1993, Creditor's counsel stated, "[Neither t]he trustee nor counsel were able to obtain the books and records of the debtor, unfortunately. I believe that the debtor moved out of the state and no books and records were ever obtained." Transcript of August 23, 1993 hearing at 10.

the recipient of a loan for repayment accrues immediately when the loan is received, if the contract—be it oral or written—does not specify a term. *E.g., The Bradford, Eldred & Cuba R.R. Co. v. The New York Lake Erie & W.R.R. Co.*, 123 N.Y. 316, 326–27, 25 N.E. 499 (1890) ("[W]here no time of payment is specified in a contract for the payment of money, it is payable immediately. The law is so well settled on that point as scarcely to warrant the citation of authorities."); *Pine v. Okoniewski*, 256 A.D. 519, 11 N.Y.S.2d 13, 16 (4th Dep't 1939) ("When no time of payment is specified in a simple contract for the payment of money, it is payable immediately.") (citations omitted); 75 N.Y.Jur.2d § 164 (1993) (citing numerous authorities).

■ Parties may of course choose to specify a time for payment, and such time agreement will control. 75 N.Y.Jur.2d § 10 (1993) (citing *Whittlesey v. Delaney*, 73 N.Y. 571 (1878); *Giles v. Comstock*, 4 N.Y. 270 (1850)). Such an agreement delays when demand for return of the loaned funds may be made, and when any cause of action upon the loan accrues.

In the instant case, the Handwritten Receipt by Debtor's president serves to establish the existence of the Loan, but does not specify when the loaned funds must be returned. Thus, unless the parties agreed otherwise, the $60,000 would have to be returned upon Creditor's demand, and a cause of action upon the Loan accrued the date the funds were loaned. As detailed above, Creditor claims that he and Debtor's president orally agreed to modify when the funds were to be returned and when any cause of action accrued. Creditor's alleged oral agreement adds to the terms of the Handwritten Receipt created by Debtor.

■ The first issue with respect to establishing the existence of Creditor's alleged oral agreement, which adds to the terms of the Handwritten Receipt for the Loan, is whether evidence of the collateral agreement is barred by the parol evidence rule. Where parties have reduced their agreement to a writing, the parol evidence rule operates to exclude evidence of any prior oral or written agreement or any contemporaneous oral agreement when offered to contradict, vary, add to, or subtract from the terms of the writing. *Thomas v. Scutt*, 127 N.Y. 133, 137, 27 N.E. 961 (1891); *see also* RICHARDSON ON EVIDENCE § 601 (Jerome Prince) (10th ed. 1973 & Supp.1985). But the parole evidence rule does not apply, however, where the entire agreement is not incorporated in a written document, such as where the only writing is a receipt. *Komp v. Raymond*, 175 N.Y. 102, 108–09, 67 N.E. 113 (1903); *see also* RICHARDSON ON EVIDENCE § 617 (Jerome Prince) (10th ed. 1973 & Supp.1985).

The Court holds that the written document evidencing the Loan, the Handwritten Receipt created by Debtor's president, merely constitutes a receipt given to the Creditor.[3] The Handwritten Receipt does not contain the parties' full agreement reduced to writing; it merely states, "This will acknowledge the receipt ... of four loans...." Furthermore, at the August 26th hearing held before the Court, Creditor asserted that the Handwritten Receipt was merely a "[r]eceipt for the monies that I paid. It listed four loans: June 3rd, June 5th, June 13th and July 25th. Each one for $15,000.00." Tr. at 22. Finally, during direct examination he was asked, "[W]as it ever meant to be anything more than a receipt?" Creditor responded, "No it wasn't." Tr. at 22.

■ A receipt is merely a unilateral admission and is not subject to the parol evidence rule; therefore, the full facts and circumstances attending its issuance may be shown, even though they contradict or vary the writing. *Komp v. Raymond*, 175 N.Y. 102, 108–09, 67 N.E. 113 (1903) ("That ... a receipt, being an informal and non-dispositive writing, may be modified, explained or contradicted by parole, is well established by authorities in this state and elsewhere.") (numerous citations omitted); *see also* RICHARDSON ON EVIDENCE § 617 (Jerome Prince) (10th ed. 1973 & Supp.1985). Evidence of

---

**3.** Since the Court finds that the writing constitutes merely a receipt for the money lent to Debtor, it need not consider the Trustee's other arguments pertaining to the applicability of the parol evidence rule.

Creditor's alleged oral agreement is therefore admissible.

■ In Creditor's undertaking to prove that an oral agreement existed, he casts upon himself the burden of establishing, by a preponderance of the evidence, that it was a valid oral contract which was binding upon Debtor and this burden continues with Creditor throughout the proceeding. *Murray v. Narwood,* 192 N.Y. 172, 177, 84 N.E. 958 (1908) (discussing oral agreement to modify written contract). The only evidence supporting the existence of the oral agreement alleged by Creditor was Creditor's testimony during the August 26, 1993 Hearing.

Creditor testified that when the Loans were made in 1985, the term for repayment was discussed: "The conditions were when the business was sold, [Debtor] built the business up and the business [sic] was sold, he would repay me." Tr. at 18. Creditor never asked Debtor's president to acknowledge these repayment terms in writing, testifying: "It never occurred to me. He is my brother. That is the way it is." Tr. at 30. Creditor's testimony was inconsistent regarding his allegation that the Loan would be returnable upon sale of Debtor's business. He testified that though Debtor's president informed him that the business would not in fact be sold, Creditor made no demand upon the Loan. Tr. at 32. When Creditor knew from his brother that Debtor would seek bankruptcy relief—and that no sale of Debtor's business would occur, again no request or demand for return of the funds loaned was made. Tr. at 25–27.

Creditor's testimony was disjointed and unconvincing. He was not concerned with informing the Court of the facts, but rather sought only to restate again and again that an agreement, of which there is no other evidence, was formed between he and his brother. Our factual finding is that Creditor did not make a credible witness. His demeanor and tone of voice made him unpersuasive. His answers were often vague and unintelligible. He stressed that weaknesses in his argument existed because that was the way he and his brother did business. *See* Tr. at 30 (Question: "Did there ever come a time when you asked your brother to acknowl-edge, on behalf of the Debtor, or on behalf of Kharisma before it became a debtor, that you were to be repaid in any certain event such as when the business is sold?" Answer: "It never occurred to me to ask him because we agreed what we agreed upon. He is my brother. That is the way it is."); Tr. at 32 (Question: "Yet you didn't demand that your loan be repaid?" Answer: "My relationship with my brother and family is not such that we demand things. That is the way that it is. I'm in business my whole life.").

Though in testimony Creditor repeatedly referred to the existence of this oral agreement concerning the term of the Loan, its existence did not come to light until some eight years after the Loans were made. Creditor did not raise the oral agreement in his Proof of Claim filed with the Court in July of 1992. Debtor's president has not appeared, and Debtor's books and records are unavailable. Debtor's president neglected to list the Loan or any debt owed to Creditor, his own brother. Indeed, it is not ascertainable whether the Loan was in fact satisfied by Debtor. Other creditors of Debtor's estate should not suffer the loss of $60,000 from the estate where Creditor unconvincingly alleges an oral agreement with his brother (who is unavailable) to toll the statute of limitations on a claim for relief which expired three years ago. The Court finds that Creditor has not met the burden of establishing the existence of the oral agreement due to his lack of evidence and unpersuasive testimony.

Since our holding is that Creditor failed to prove the existence of an alleged oral agreement which postponed the accrual of a cause of action upon the Loan, the Loan was payable on demand and a cause of action against Debtor accrued upon the date the funds were loaned. *E.g., The Bradford, Eldred & Cuba R.R. Co. v. The New York Lake Erie & W.R.R. Co.,* 123 N.Y. 316, 326–27, 25 N.E. 499 (1890); *Pine v. Okoniewski,* 256 A.D. 519, 11 N.Y.S.2d 13, 16 (N.Y.App.Div.4th Dep't 1939) (citations omitted); 75 N.Y.Jur.2d § 164 (1993) (citing numerous authorities); *see* 75 N.Y.Jur.2d § 10 (1993) (parties may specify time for payment, which agreement controls) (citing *Whittlesey v. De-*

*laney,* 73 N.Y. 571 (1878); *Giles v. Comstock,* 4 N.Y. 270 (1850)). Therefore, upon the date of issuance of the Loan in the case at bar, the statute of limitations began to run immediately and expired six years later, in 1991. N.Y.Civ.Prac.L. & R. § 213(2) (McKinney 1994).

For the reasons given, Trustee's Motion is **GRANTED** and the claim of Creditor is **EXPUNGED.**

**SO ORDERED.**