J. J. YORK, RESPONDENT, *v.* JOHN M. STEWARD, ET AL., APPELLANTS.

[Submitted Oct. 24, 1898. Decided Nov. 7, 1898.]

*Landlord and Tenant—Lease— Written Contract— Oral Modification of—Implied Warranty—Fraudulent Representations—Pleading—Eviction by Landlord—Evidence.*

1. In the absence of fraud, accident or mistake, oral evidence will not be admitted to the effect that the lessor, at the time of making a written lease, or prior thereto, orally warranted the condition of the premises, or that he agreed to make repairs.
2. In the lease of a house there is no implied warranty that the property is fitted for the use for which it is let or for any purpose, or that it will remain in a tenantable condition.
3. An answer which merely alleges that the plaintiff falsely represented that a building which he was about to let to plaintiff was suitable for a particular purpose, does not assert a fraudulent misrepresentation or concealment.

4.  In an action to recover rent for premises leased to defendant, it is error to refuse evidence tending to show that the plumbing in a portion of the house which was in full possession and control of plaintiff and was immediately over the room let to defendant, was defective; and that by reason thereof and of plaintiff's refusal to remedy the defect, water overflowed, ran down into the storeroom leased to defendant and deprived him of the use thereof; as the evidence tended to show a constructive eviction.

5.  An application to amend a pleading during trial is properly refused, when the amendment is not sought for the purpose of making the allegations correspond with evidence already introduced, and when no necessity for the amendment is shown.

*Appeal from District Court, Silver Bow County; J. J. McHatton, Judge.*

ACTION by J. J. York against J. M. Steward and another, doing business as the Smith Piano Company. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed.

*John W. Cotter*, for Appellants.

*Charles O'Donnell* and *Francis Brooks*, for Respondent.

PIGOTT, J.—This is an action for rent alleged to be due upon a lease entered into between plaintiff and defendants on December 31, 1892, by the terms of which plaintiff let to the defendants the storeroom and first basement of a three-story brick building in Butte for the term of 12 months, beginning with January 1, 1893, at the monthly rental of $225 for the first six months, and of $250 for each month thereafter. Provision is made in the lease that, if the rent be not paid monthly in advance, the lessor may re-enter, and take possession, and, at his option, may determine the lease. It contains the usual covenants against waste or alteration by the lessees, but expresses no covenant whatever on the part of the lessor. Upon issues framed by the complaint, answer, and reply the cause was tried by jury. A verdict was rendered, and judgment entered for the plaintiff. From an order refusing a new trial, and from the judgment, defendants have appealed.

1. Much difficulty has been experienced in the effort to determine the exact ground upon which the defendants, in their first defense and counterclaim, intend to rely. The matters

there stated as constituting both a defense and a counterclaim
are set forth in a manner so obscure, and with such disregard
of the rule requiring conciseness and clearness, that a demur-
rer attacking the part of the answer now being considered, for
want of certainty, as well as for ambiguity, would have been
well interposed.    Since, however, no objection was taken in
the court below or here to the answer upon any ground what-
soever, we have examined the first defense and counterclaim
as pleaded, and, after some hesitation, arrive at the conclusion
that the pleader intended to aver, substantially, that, on, or
just before, the execution of the lease, and while the defend-
ants were negotiating with plaintiff therefor, plaintiff war-
ranted that the building was in all respects suitable for the
purpose of carrying on therein the piano and musical instru-
ment business, in which defendants were engaged; that the
basement would be ceiled, and put in good condition, and a
new sidewalk laid; that defendants, relying upon these repre-
sentations and warranties, entered into the lease, and in pur-
suance of the lease went into possession of the building, and
placed their stock of musical instruments therein, and remained
in possession until August 31, 1893; that the building was
defectively constructed; that it was unfit for defendants' busi-
ness, and that by reason of the defective construction of the
plumbing and water fittings in the second story, which was
occupied by and in the possession of plaintiff, the sinks and
closets situated in the second story, and under the control of
plaintiff, were allowed to overflow, and the water permitted
to run down into the defendants' place of business, and upon
defendants' merchandise, whereby the stock of goods was in-
jured; that defendants repeatedly notified plaintiff of the de-
fective condition of the plumbing and fittings in the building,
but that plaintiff refused and neglected to remedy such de-
fects, by which default plaintiff permitted a continuing nui-
sance to exist; that, because of the defective construction of
the building, it was unfit for the use for which it was rented
by the defendants, and was untenantable; and that by reason
of the representations and warranties of the plaintiff as to the

condition of the building, and by reason of its unfitness for the purpose for which it was warranted by plaintiff, and by reason of the injury done by the water, defendants were damaged in their business in the sum of $250.

The first error assigned is the action of the court below in refusing to permit the introduction of evidence tending to prove an oral warranty of the condition of the building. The rule that, in the absence of fraud, accident or mistake, oral evidence cannot be admitted to alter, add to, or contradict the terms of a written contract, is so familiar that it would seem needless to cite authorities. This rule is applicable to evidence offered for the purpose of establishing an oral warranty, where, presumptively, the parties have reduced their entire contract to writing. (*Naumberg* v. *Young*, see Vol. 44 N. J. Law, 331, 43 Amer. Rep. 380; *McLean* v. *Nicol* (Minn.), 45 N. W. 15; *Snead* v. *Tietjen* (Ariz.), 24 Pac. 324. See, also, *Sanford* v. *Gates*, 21 Mont. 277, 53 Pac. 749; *Gaffney Mercantile Co.* v. *Hopkins*, 21 Mont. 13, 52 Pac. 561; *Mast* v. *Pearce*, 58 Iowa 579, 8 N. W. 632, and 12 N. W. 597; *Fisher* v. *Briscoe*, 10 Mont. 124, 25 Pac. 30; *Anderson* v. *Perkins*, 10 Mont. 154, 25 Pac. 92; *Stevens* v. *Pierce* (Mass.), 23 N. E. 1006; *De Witt* v. *Berry*, 134 U. S. 306, 10 Sup. Ct. 536; *Braly* v. *Henry* (Cal.), 12 Pac. 623.) The court, therefore, did not err in excluding all evidence having a tendency to show that plaintiff, contemporaneously with the making of the lease, or prior thereto, warranted by word of mouth the condition of the building, or promised to lay a new sidewalk, or ceil the cellar. Nor may defendants base their defense and counterclaim upon the breach of an implied warranty of fitness, for in the lease of a house there is no implication of warranty that the property is fitted for the use for which it is let, or that it is suitable for any purpose, or that it shall remain in a tenantable condition. (*Blake* v. *Dick*, 15 Mont. 236, 38 Pac. 1032; Gear on Landlord and Tenant, Sec. 99.)

Defendants insist, however, that, having pleaded fraud, concealment, and misrepresentation in the making of the lease, it was competent for them to show the actual condition of the

building, and its unfitness for the purpose intended. In answer to this contention it is sufficient to say that neither fraudulent misrepresentation nor concealment is pleaded. The answer, it is true, alleges that the plaintiff represented the building to be suitable, but it is silent as to whether or not the representation was fraudulently made. The averment that the representation was false is tantamount to saying that it was merely untrue. (*Budd* v. *Power*, 8 Mont. 380, 20 Pac. 820.)

Defendants assign as error the rejection of evidence which they say was offered for the purpose of proving that the building was so defectively constructed in respect of the plumbing, fittings, water-closets and sinks on the second floor, and in the possession of plaintiff, as to cause the water therein continually to overflow, and run down through the ceiling into defendants' storeroom, the effect of which was to deprive them of its beneficial enjoyment, to render it untenantable, and to injure their goods; and that plaintiff failed, refused and neglected to remedy the defect, although his attention was frequently called to it by the complaints of the defendants; and that by reason of the continuance of the nuisance defendants surrendered the demised property in August, 1893. That the evidence tendered and the offers of proof were as broad as defendants assume they were, is not perfectly apparent; but we are inclined to think that, when the pleadings and the whole course of the trial are considered, it may fairly be held that the evidence ruled out and the offers to prove comprehended, in substance, what is claimed by defendants.

Would the evidence offered and excluded tend to establish the violation by plaintiff of any agreement or promise on his part contained in the lease? The usual words of demise import a covenant for quiet enjoyment, which signifies that the tenant shall not be evicted by title paramount, and also that his possession shall not be disturbed by the acts or wrongful omissions of the lessor. Any sort of annoyance, unless, perhaps, a mere trespass, affecting the occupation of the property let, which prevents the tenant from enjoying it in as ample a manner as he is entitled to by the terms of the lease, amounts to

a breach.    If the lessor disturbs the possession by an unlawful interference therewith, the lessee may, when sued for the rent, set up the damages arising from such disturbance as a counterclaim (*Hanley* v. *Banks* (Okl.) 51 Pac. 664; *McDowell* v. *Hyman* (Cal.) 48 Pac. 984); while at common law it seems he may recoup damages (*Mayor* v. *Mabie*, 13 N. Y. 151).

Treating the evidence which was offered as received, it appears that the plaintiff owned and was in possession and control of that part of the building immediately over the room let by him to the defendants; that the plumbing and fittings in such part of the house were defectively constructed; and that, by reason of the refusal of the plaintiff to remedy the defect, water overflowed the sinks and closets of the plaintiff, and ran down into the storeroom of the defendants to such an extent as to deprive them of the beneficial use of their tenement. We are satisfied that such evidence would, at least, tend to establish a constructive eviction, occasioned by the omission of the lessor to abate a nuisance, originating in, and continuing to exist upon, the property owned and controlled by him.    Anything which is an obstruction to the free use of property so as to interfere with its comfortable enjoyment is a nuisance. (Compiled Statutes 1887, First Div. Sec. 361.)    It is well settled that defective water pipes become a nuisance when carelessly maintained.    (Wood on Nuisances, Sec. 124.)    The landlord's acts or defaults may not amount to a physical eviction; nevertheless they may be of such character as to create or permit the continuance of a nuisance, "which, by preventing the reasonable use by the tenant of the premises, would affect directly the consideration of the contract between them." (*Sully* v. *Schmitt*, 147 N. Y. 248, 41 N. E. 514; *McDowell* v. *Hyman, supra*; *Kline* v. *Hanke*, 14 Mont. 361, 36 Pac. 454; *Marshall* v. *Cohen*, 44 Ga. 489.)    If defendants, as tenants of the lower floor, were disturbed in their occupancy, or constructively evicted by the flowing of water from improperly constructed fixtures in a part of the building not let to them, but in the possession and under the control of plaintiff, the lessor, and the disturbance or eviction would not have resulted but for the omission of the lessor to remedy the defective con-

struction within a reasonable time after notice thereof, then
the lessor, at least in the absence of excusing facts, has vio-
lated the implied covenant for quiet enjoyment. This is clearly
common sense as well as the law; indeed, the supreme court
of Georgia, in *Freidenburg* v. *Jones,* 63 Ga. 612, which case
is approved in *Jones* v. *Freidenburg,* 66 Ga. 505, S. C. 42
Amer. Rep. 86, held that, "Where a tenant on a lower floor
is injured by the flowing of water from the bathtubs and water
fixtures situated above, he has a right of action against the
landlord, if the overflow results from their improper construc-
tion; and this liability exists without reference to the occupa-
tion of the upper apartment by another tenant." But it is
not necessary in the case at bar to approve or disapprove the
doctrine there declared. *Blake* v. *Dick,* 15 Mont. 236, 38
Pac. 1070, is cited by plaintiff as controlling, but nothing de-
cided in that case is inconsistent with the principles applicable
to the question raised in the case before us.

For the error referred to, the motion for a new trial should
have been granted.

2. During the trial the defendants asked leave to amend
the answer by inserting an allegation to the effect that, owing
to the negligent use of the upper story by the plaintiff and his
tenants, the water fittings were allowed to overflow, and the
water to run down, so as to render the store untenantable for
defendants' purpose, or for any purpose. The request was
denied. We perceive no error in the action of the court. It
does not appear that defendants made any showing of the ne-
cessity to amend, nor was the amendment sought for the pur-
pose of making the allegations correspond to the evidence al-
ready introduced. Some testimony had been received tending
to prove that lodgers or tenants on the second floor had allowed
water to overflow the sinks. But this evidence was received
as one of the inducements for the alleged agreement for alter-
ation or cancellation of the lease pleaded in the second defense,
and not as supporting the averments constituting the first de-
fense and counterclaim. It does not appear that the court
abused its discretion in refusing the application, which was
made during the progress of the trial.

3. The second defense is, in effect, that the plaintiff, on July 1, 1893, in consideration of the prevailing business depression, and of the untenantable construction of the demised property, and of the defective condition of the water sinks on the second floor of the building, entered into a new agreement with defendants, by which he let the property to them from month to month at a rental of $225 monthly, and that on August 1, 1893, defendants notified plaintiff that they would quit the premises on September 1, 1893, and that they were never in possession after August 31st, and that they paid all rents accrued to September 1, 1893. Plaintiff admitted that the rent was paid to September 1st, and that defendants vacated the property in August, and did not thereafter occupy it. Plaintiff denied that there was any agreement whatever to change the terms of the lease, and testified that because of the stagnation of business he voluntarily reduced the monthly rent for July and August from $250 to $225. The testimony upon this question was in substantial conflict The jury returned a verdict for the plaintiff in the sum of $846, and thereby necessarily found that the only change made in the lease was a reduction of the rent to $225 a month for the last half of the term.

Errors are also assigned upon the charge of the court and refusal of prayers for instructions relating to the second defense. Examination of the instructions given and of those refused has disclosed no reversible error. Some other matters of minor importance are specified as error, but, as they are not likely to arise again in the cause, their consideration is not deemed necessary.

Let the judgment and order appealed from be reversed, and the cause remanded, with direction to the district court to permit the defendants to amend the answer as they may be advised, and within such time and on such terms as may to the court seem proper. It is further ordered that appellants do not recover the costs incident to the appeal, and that each party bear such of said cost as were incurred by him.

*Reversed and remanded.*

HUNT, J., concurs.   PEMBERTON, C. J., not sitting.