HARRISON ET AL., RESPONDENTS, *v.* FREGGER ET AL., APPELLANTS.

(No. 6,727.)

(Submitted November 13, 1930. Decided November 26, 1930.)

[294 Pac. 372.]

450

*Messrs. Wood & Cooke,* for Appellants, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

*Messrs. Derry & Bowen,* for Respondents, submitted a brief; *Mr. Guy C. Derry* argued the cause orally.

452

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiffs brought action to recover the sum of $500 as rent due on certain premises in Billings, operated as the "Exchange Cigar Store." The defendants, Max Fregger and The Theater Operating Company, defended jointly on the ground that they had been evicted from the premises, and Fregger set up the further defense that he had been released from the obligation to pay rent.

The cause was submitted to the court upon the admissions in the pleadings and an agreed statement as to the remaining facts. The court rendered judgment in favor of the plaintiffs and against both defendants, and thereafter denied motion for a new trial. The defendants have appealed from the judgment.

The facts are as follows: Plaintiffs leased the premises to Fregger in 1925, for a term of six and one-half years, at a monthly rental of $250, payable in advance. Fregger occupied the premises and paid the rent until July, 1926, when, with the consent of plaintiffs, he assigned his lease to The Theater Operating Company. The company conducted business on the premises and paid the rent until May, 1928,

when, again with the consent of plaintiffs, it subleased to one Will Scott, but continued to pay the rent to plaintiffs.

In 1929 three employees of the subtenant, Scott, were convicted of violating the "Prohibition Act" on the premises, and thereafter the federal government commenced abatement proceedings, making the offending employees and these plaintiffs defendants. Although these plaintiffs were duly served with process, no appearance was entered and the proceedings resulted in a default judgment and decree of abatement, with injunction against the use or occupation of the premises for the period of one year, but it was therein provided that the premises might be reopened for "legitimate business other than a soft drink parlor or pool hall, if the defendants shall pay the costs," and give bond in the sum of $1,000, conditioned for the observance of the provisions of the decree and injunction. The bond was not furnished and the premises were "padlocked" by the United States marshal. Defendants are in possession of the keys to the premises, but not to the padlocks. Neither plaintiffs nor defendants in this action had pre-knowledge of the acts resulting in the abatement proceedings.

1. It is contended on behalf of defendant Fregger that his assignment of the lease, with the consent of the lessors, their acceptance of the rent from the assignee and recognition of the latter's right to sublease the premises, constituted novation and discharged Fregger's obligation.

"Novation is the substitution of a new obligation for an existing one." (Sec. 7460, Rev. Codes 1921.) One of the "modes of novation" is "by the substitution of a new debtor in the place of the old one, with the intent to release the latter" (sec. 7461, Id.), and, in determining whether or not novation is made by such substitution "the intent to release the original debtor is of vital importance." (*McAllister* v. *McDonald,* 40 Mont. 375, 106 Pac. 882.)

The distinction between novation and assignment is clear; in novation the obligation between the original parties to the contract is completely extinguished and a new obligation be-

tween the transferee and obligor is created and substituted for the previous one; while, after assignment, the obligation of the original debtor may continue to rest upon him, and he may be compelled to respond in the event of the default of the assignee. (46 C. J. 576; 5 C. J. 977.)

"In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed * * * ; the point in every case, then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all of the circumstances. The existence of such an intention may, of course, be found although there is nothing positive in the agreement." (20 R. C. L. 366; see, also, *McAllister* v. *McDonald,* above.)

Here we have merely an assignment and there is nothing in the subsequent acts of the lessors in accepting rent from the assignee and thereafter permitting it to sublease the premises, —it still being looked to for the rent—inconsistent with the intention on the part of the lessors to continue to look to Fregger for the rent in the event of the default of his assignee.

Liability for rent is based either upon privity of contract or privity of estate; where there is an express promise to pay contained in the lease, the lessee is held in privity of contract; while in the absence of such express promise, the liability arises out of an implied obligation whereby the lessee is held in privity of estate. Therefore, in the absence of an express promise to pay rent, if the lessee parts with his estate, with the consent of the lessor, the privity of estate is destroyed and the lessee is no longer obligated to pay rent, as there is nothing on which to base the implied obligation; but where there is an express promise to pay, the lessee, after assignment of his lease, remains liable because the privity of contract is unaffected by the termination of the privity of estate. (*Cauble* v. *Hanson,* (Tex. Civ. App.) 224 S. W. 922; *McKee's*

*Cash Store* v. *Otero,* 19 Ariz. 418, 171 Pac. 910; *Samuels* v. *Ottinger,* 169 Cal. 209, Ann. Cas. 1916E, 830, 146 Pac. 638; *Edwards* v. *Spaulding,* 20 Mont. 54, 49 Pac. 443; 36 C. J. 371; 16 R. C. L. 845, 846.)

Here, defendant Fregger expressly covenanted to pay rent for the full term of the lease and he was properly made a party defendant.

"The fact that the assignee is also liable for rent, through ▇ privity of estate, or express agreement to assume the obligations of the lease, will not discharge the lessee. The lessor may, at his election, pursue either or both for payment, although he can have but one satisfaction." (36 C. J. 372.)

2. It is earnestly contended that the judgment herein is ▇▇ contrary to law and is not supported by the facts as agreed upon by the parties; that under the facts disclosed there was constructive eviction of the defendants from the premises, absolving them from further obligation to pay rent.

Eviction of a tenant by his landlord is a complete defense to an action for rent (*Osmers* v. *Furcy,* 32 Mont. 581, 81 Pac. 345), and, while eviction was originally a dispossession of the tenant by some act of his landlord, or by failure of the latter's title, it has now come to include any wrongful act or omission of the landlord which results in a substantial interference with the tenant's possession or enjoyment of the premises. (1 Taylor on Landlord & Tenant, 9th ed., 377; 36 C. J. 256; *Blaustein* v. *Pincus,* 47 Mont. 202, Ann. Cas. 1915C, 405, 131 Pac. 1064.)

Defendants first contend that they were dispossessed by reason of plaintiffs' omission to defend in the abatement proceeding. There is some merit in this contention. That proceeding was instituted under the authority of section 22 of the Act of Congress of October 28, 1919 (Title 27, U. S. C. A., sec. 34), which declares that, in such action, on finding that the material allegations of the petition are true, "the court shall order that no liquor shall be * * * sold * * * on the premises * * * and upon judgment of the court ordering such nuisance to be abated, the court may order that

'the premises' shall not be occupied for one year thereafter."
"The imperative words go only to the immediate stopping of
what is clearly a nuisance. The permissive words allow a
closing for a year," etc. (*Murphy* v. *United States*, 272 U. S.
630, 71 L. Ed. 446, 47 Sup. Ct. Rep. 218.) The proceeding is
in the nature of a civil action to prevent a continuance of the
commission of unlawful acts on the premises, and does not
involve the element of punishment. (*United States* v. *Stevens*, 103 Conn. 7, 130 Atl. 249; *State* v. *Froelich*, 316 Ill. 77,
146 N. E. 733.)

Following the line of reasoning in the foregoing cases, it has
been held by federal district courts that section 22 above, construed with reference to other sections of the Act, does not
justify the padlocking of premises of an innocent owner because of the unlawful acts of his tenant, unless such owner,
after notice that the premises constitute a nuisance, fails, by
repossession or other effective means, to abate the nuisance.
(*United States* v. *Schwartz*, 1 Fed. (2d) 718; *United States* v.
*McCrory*, 26 Fed. (2d) 189; *United States* v. *Kelly*, 24 Fed.
(2d) 133.) However, other courts of concurrent jurisdiction
have held to the contrary (*United States* v. *Boynton*, 297 Fed.
261; *Grossman* v. *United States*, 280 Fed. 683), and the supreme court of the United States has, impliedly at least, approved the declaration in the *Boynton Case* (*Murphy* v. *United
States*, above), and we cannot, therefore, speculate as to what
would have been the effect of the defense of innocence in the
instant case. Further, the above contention is based upon the
premise that these defendants were in nowise responsible for
the acts of the subtenant, which is contrary to the rule laid
down in the adjudicated cases.

According full faith and credit to the abatement decree and
the order padlocking the premises for one year, the moving
cause thereof was the violation of the law on the premises by
the employees of the sublessee, for whose acts the lessor was
in nowise responsible.

As between the lessor and the sublessee there existed neither
privity of contract nor privity of estate (*Kimbriel* v. *Mont-*

*gomery,* 28 Okl. 743, 115 Pac. 1013; 13 R. C. L. 879), and, by the assignee's action in subleasing the premises, the lessee was not relieved from responsibility created by express covenants in the lease. (*Agen* v. *Nelson,* 51 Wash. 431, 98 Pac. 1115.)

In *First Trust & Savings Bank* v. *Raklios,* 247 Ill. App. 183, it appears that the defendant held certain premises under lease containing a prohibition against using the building for unlawful purposes; he sublet to one Blom as a radio sales-room, but the latter, without the knowledge of the lessee, erected a still in the rear room. Under a search-warrant, federal officers took possession of the premises. Defendant appealed from a judgment for rent rendered against him. The court declared: "The chief question is whether the possession of the premises by officers of the federal government * * * the result of the violation of the law * * * can be successfully set up and maintained by the defendant as a defense to a suit upon the lease for rent; in other words, to put the case bluntly, may the defendant profit by, what seems to be, his own wrong?" Answering this question in the negative, it was held that defendant was answerable for the illegal acts of his subtenant, although he did not know of the illicit operation; the court, quoting from *Miller* v. *Prescott,* 163 Mass. 12, 47 Am. St. Rep. 434, 39 N. E. 409, said: " 'It may not be reasonable to hold * * * the lessee liable for an unlawful use of the property by trespassers, but he may well be held to "suffer" unlawful use of the property if he does not take effectual measures to prevent such use by those who occupy by his authority,' and in *Lubliner* v. *Gaston,* 243 Ill. App. 627, * * * this court said: 'It is the law that if the terms of a lease between plaintiff and defendant are violated by the defendant's subtenants, the defendant is responsible therefor, whether or not he knew of such violation.' (*Wheeler* v. *Earle,* 59 Mass. (5 Cush.) 31, 51 Am. Dec. 41.) In the latter case the court said: 'By creating subtenants, the original lessee puts them in possession of the premises, and being thus under him, their acts, if in violation of the condition of the lease,

458

will cause a forfeiture. (*Burke* v. *Bryant*, 283 Pa. St. 114, 128 Atl. 821.)' ''

Under these authorities, the wrong resulting in the "padlocking" of the premises is that of these defendants, and they are not permitted to take advantage of their own wrong.

It is true that the plaintiffs might have saved the defendants from loss by posting the required bond, but there is nothing in the lease requiring them to go to this additional expense, nor to expose themselves to the additional risk of loss by reason of future acts of the defendants or those they might have placed in possession of the premises, and their failure to post the bond did not constitute constructive eviction.

3. As ground for a new trial, counsel for defendants filed an affidavit showing that, by stipulation, the answer was amended to include the entire judgment-roll in the abatement proceeding, but that through some inadvertence the stipulation was not filed and the judgment-roll was not, therefore, considered by the trial court. From what has been heretofore said it is apparent that the judgment-roll mentioned was immaterial; the facts concerning the abatement proceeding were before the court, and no error was committed in denying the motion for a new trial. The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.

Rehearing denied December 22, 1930.