MERRITT, Respondent, *v.* TAGUE et al., Appellants.

(No. 7,078.)

(Submitted May 29, 1933.  Decided June 30, 1933.)

[23 Pac. (2d) 340.]

*Mr. E. G. Toomey* and *Mr. Carl McFarland,* for Appellants, submitted an original and a reply brief; *Mr. McFarland* argued the cause orally.

*Mr. E. H. Goodman, Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Respondent, submitted a brief; *Mr. Adair* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants Antoinette G. and Adele Tague from a judgment entered on a verdict in favor of plaintiff. Defendant Laura T. Galen was eliminated from the case on motion for nonsuit.

In substance, the complaint alleges that on March 15, 1930, plaintiff entered into a written lease whereby he leased from defendant Antoinette G. Tague certain described real estate in Broadwater county, known as the Runnymede ranch, for a period of four years; that defendants are sisters and are interested in or own the leased property; that on June 1, 1930, plaintiff and his family moved onto the leased property and proceeded to operate it under the terms of the lease; that on or about the 20th of June defendants conspired, combined, confederated and agreed to damage and injure plaintiff and force him to leave and abandon the premises and to lose the profits which he otherwise would have made; that, to effect the object of the conspiracy, defendants came upon the premises and "wrongfully and maliciously harassed, disturbed, annoyed and persecuted plaintiff and his said wife and family, and divers and sundry guests and visitors who called at said premises to see them"; that because of the wrongful acts of defendants "plaintiff has been greatly harassed, annoyed and humiliated, and the peace and quiet of his home life and that of his wife and family have been rendered so extremely unpleasant, uncomfortable, unhappy and unsafe, that the said premises became and were, in the belief of plaintiff, an unfit

and unsafe place for him and his said family to live and reside upon," and that defendants so interfered with plaintiff in the carrying out of his part of the lease that he was compelled to, and did, remove from the premises on or about November 30, 1930, and was prevented from making the profits he otherwise would have made by operating the ranch under the lease, to his damage in the sum of $15,000.

The answers admit the making of the lease; that defendants are sisters; that plaintiff and his family moved onto the leased premises about June 1, 1930, and otherwise amount to general denials. The answer of defendant Antoinette G. Tague contained what is called a separate defense or cross-complaint, wherein she prayed judgment for $5,000 against plaintiff. The contents of this cross-complaint are not important here.

The evidence offered by plaintiff, briefly summarized, shows that, about a month after he took possession of the leased property, defendants Antoinette G. and Adele Tague moved into a cabin on the leased premises. From that time on until about August 27 defendants Antoinette G. and Adele Tague continually quarreled with plaintiff, his father, wife, children, hired man and guests, called some of them vile names, and told plaintiff repeatedly they would make him get off the place; that they assaulted plaintiff's father, engaged in physical combat with plaintiff's guest, Edith Simmons, caused the arrest of both, and in general interfered with the peaceful occupancy of the premises by plaintiff and his family.

Defendants, who appeared without counsel, submitted evidence to the general effect that there was some quarreling and considerable fighting, as related by plaintiff's witnesses, but that plaintiff, his family and guests were the aggressors. The evidence is in sharp conflict as to the details of the physical encounters and particularly as to who started them. It is apparent that in the end defendants got the worst of the physical engagements. All agree, however, that the actual hostilities ceased on August 27. There was no fighting or quarreling after that date. Defendants ceased to live on the property after that time, although they occasionally went

there. They knew nothing of plaintiff's intention to leave the property, until about the 1st of November, when the key was delivered to them and the premises were vacated.

The action is plainly one for damages for a constructive eviction from the leased premises. No claim is made that there was an actual eviction.

"A constructive eviction may arise from the improper conduct of the landlord in interfering with the beneficial enjoyment of the premises, such as threats of expulsion, attempts to lease to others, unreasonable demands, insults, or assaults. Such matters, however, in order to constitute a constructive eviction, must substantially interfere with the tenant's beneficial enjoyment of the premises, and the interference must be of a permanent nature." (36 C. J. 267.)

Conceding, without deciding, that the evidence was sufficient to warrant a finding by the jury that the acts complained of amounted to a constructive eviction, the judgment cannot stand because of plaintiff's conduct in remaining in possession for more than two months after the acts complained of subsided. The rule is that, if a tenant remains in possession of leased premises an unreasonable length of time after the acts or omissions constituting constructive eviction, he waives the right to assert an eviction. The rule is stated in 36 C. J. 264, as follows: "Since there can be no constructive eviction without a surrender of possession by the tenant, a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction, and cannot thereafter abandon the premises and assert it. However, the eviction is not waived because the tenant fails to abandon the premises immediately after the acts or omissions complained of. He has a reasonable time within which to exercise the right of abandonment."

What is or is not a reasonable time is usually one of fact for the jury, but, when the facts are undisputed, as here, it is one of law. (*Palumbo* v. *Olympia Theatres, Inc.*, 276 Mass. 84, 176 N. E. 815, 75 A. L. R. 1111.) And where two months

have elapsed after the acts relied upon before giving up possession of the premises, there is a waiver of the eviction. (*Hansen* v. *Stein*, 201 Ill. App. 501; *Harper etc. Co.* v. *Jackson*, 240 Pa. 312, 87 Atl. 430; *Waldene Realty Co.* v. *Pfalzer*, 223 App. Div. 787, 227 N. Y. Supp. 649; *Baptist Convention* v. *Wright*, 136 Okl. 150, 276 Pac. 777.) And in many cases a lesser time has been held to constitute a waiver. (*Ernst* v. *Wheatley*, (Sup.) 93 N. Y. Supp. 1116; *Merida Realty Co.* v. *Coffin*, (Sup.) 123 N. Y. Supp. 120; *Butler* v. *Smith's Homeopathic Pharmacy*, 5 N. Y. St. Rep. 885; *Thompson* v. *Realty Co.*, 105 Wash. 378, 177 Pac. 769; *Cohen* v. *Conrad*, 110 Minn. 207, 124 N. W. 992; *Stein* v. *Rice*, 23 Misc. 348, 51 N. Y. Supp. 320.)

In the note appearing in 75 A. L. R. 1117, it is said: "In the great majority of cases abandonment after a month has been held not to have been within a reasonable time." Again, on page 1123 of the same note, it is said: "The lessee loses his right to abandon the premises if, before he has carried out his intention to abandon, the cause for abandonment has ceased to exist."

Here there were no acts complained of after August 27. True, plaintiff testified that defendants told him repeatedly to get off the place, and that "the last time they told me to get off the place, it seems to me it was about three weeks or so before I did leave." If this statement, standing alone, could be said to amount to a continuance of the acts amounting to a constructive eviction—a point we need not decide—it would be of no avail, for later, on cross-examination, he admitted remembering only one occasion between August 27 and November 3 when defendants spoke to him, and that was a day or two before plaintiff left the ranch, and on that occasion no such statement was made by them. Plaintiff cannot complain if his testimony is taken as left by him on his cross-examination. (*Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028.)

Plaintiff, by remaining in possession of the premises until the first part of November, lost the right to assert that he left because of the acts of defendants committed on and prior to

August 27. We do not mean to hold that it should be held under all circumstances, as a matter of law, that this was an unreasonable time within which to abandon the premises. Facts may be adduced in a proper case from which it might be held that such a period of time was reasonable under the circumstances: Compare cases in the note in 75 A. L. R., on page 1119. But no showing is made here justifying the continuance of possession by plaintiff until in November, if he relied upon the acts complained of as constituting a constructive eviction, all of which occurred on and prior to August 27. The burden of producing such facts was upon plaintiff, the tenant. (*Automobile Supply Co.* v. *Scene-In-Action Corp.*, 340 Ill. 196, 172 N. E. 35, 69 A. L. R. 1085; *Kinn* v. *Slyde*, 246 Ill. App. 26.)

The judgment is reversed and the cause remanded, with direction to dismiss the action.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.