ROBERT J. SEWELL AND TERESE P. SEWELL, PLAINTIFFS AND RESPONDENTS, v. HENRY J. HUKILL, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF ANNA BENTCIK, DECEASED, DEFENDANT AND APPELLANT.

No. 10125.
Submitted September 22, 1960. Decided October 19, 1960.
356 P. 2d 39.

M. K. Daniels, Deer Lodge represented appellant. Keeley, McElwain & Ryan, Deer Lodge, represented respondent. Robert P. Ryan argued orally for respondent.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment in favor of plaintiffs entered in the district court of the third judicial district,

Powell County, in a suit brought by plaintiffs in the form of a declaratory judgment to terminate a lease entered into by plaintiffs as lessee and Anna Bentcik, now deceased, as lessor.

James Sewell, father of plaintiff, Robert J. Sewell, leased the building in question from Anna Bentcik and her husband in 1939. The record does not disclose the form or contents of this lease. James Sewell used and occupied the building as a retail grocery store until 1955 when plaintiffs, Robert J. Sewell and his wife, Terese P. Sewell, assumed possession under the lease in question which was executed on December 1, 1955. This lease was to run for a period of 10 years from the date of execution. By an express provision in the lease, the lessor covenanted and agreed "to keep and maintain the outside of said premises in a tenantable condition, including the repair of the roof, if and when necessary."

Subsequent to the execution of this lease, Anna Bentcik died testate and Henry J. Hukill, defendant herein, was duly appointed and qualified as executor of the last will and testament of the said Anna Bentcik.

Prior to December 1, 1955, plaintiffs began to plan the construction of a new store building a short distance from the leased premises. This building was completed sometime after the execution of the lease, and in November of 1956 the selling operation of plaintiffs' retail grocery business was moved to this new location. The plaintiffs continued to use the leased premises as a storeroom for their stock of merchandise.

The evidence is uncontroverted that the roof of the leased premises leaked from 1946 until 1955 while James Sewell was in possession, and that the lessor made repeated attempts to correct the matter during this period of time by patching the roof whenever James Sewell complained that it was leaking. The patching would only provide temporary relief and the leaks would spring out again after a period of inclement weather. At times James Sewell had to protect his merchandise with buckets and canvas.

The roof continued to leak after plaintiffs went into possession on December 1, 1955, and the lessor or her agent continued to attempt to remedy the situation when called on. However, during the latter part of March 1957, the roof began leaking so badly after spring rains that no merchandise except that in tin cans could be stored safely in the building thereafter. Water seeping through the roof at this time did considerable damage to the interior of the building and the merchandise stored therein. Plaintiffs started to move their stock of merchandise to the location of their new store as fast as they could. There was evidence that the new store did not contain adequate space to properly store all of the merchandise which the plaintiffs had been keeping in the leased premises, however, plaintiffs managed to get it all moved to the new store by the middle of April 1957. Robert J. Sewell delivered the key to the premises to defendant's secretary sometime between the middle of April and the end of May. The evidence as to when this was actually done is conflicting.

James Sewell also testified that there was a considerable amount of water damage sustained in May of 1957 when rain water seeped through the roof. The testimony of three other disinterested witnesses was to the same effect.

Plaintiffs paid the rent due under the terms of the lease up to and including the month of May 1957.

On June 11, 1957, plaintiffs filed a complaint alleging that Anna Bentcik in her lifetime, and the defendant since her death, failed to maintain the roof of the building thereby breaching the covenant to repair contained in the lease, and that as a result of this breach the building had become untenantable. Plaintiffs' prayer was that the lease be terminated and of no further force or effect.

It is apparent from the pleadings that plaintiffs base their right to have the lease cancelled on the theory that there had been a constructive eviction.

The cause came on for hearing before the court, sitting with-

out a jury, on December 11, 1958. After presentation of evidence by both sides, the district court found "That at the time of the execution of the aforementioned lease, the roof of said premises did leak, and although continued efforts were made by the lessor to remedy this situation, the roof continued to deteriorate to the extent that water leaked and seeped through said roof into the interior of the building, thereby causing damage to the stock of merchandise and equipment stored in said premises by the lessee. That because of the leaky condition of the roof the premises became wholly untenantable to the Plaintiffs."

The district court thereupon concluded that there had been a constructive eviction and ordered the lease cancelled, annulled, and held for naught.

Defendant contends that none of the elements of a constructive eviction were present in the instant cause, and therefore, the decision of the district court is against the law.

██ A constructive eviction relieves the tenant of the obligation to pay rents due under the lease. Osmers v. Furey, 32 Mont. 581, 590, 81 P. 345; Harrison v. Fregger, 88 Mont. 448, 455, 294 P. 372. It involves an abandonment of the leased premises by the tenant on justifiable grounds. 52 C.J.S. Landlord and Tenant, § 445, p. 160.

██ Two distinct factors must exist before a tenant can claim that he was constructively evicted. They are:

(1) An act or omission by the landlord, or someone acting under his authority, which permanently interferes with the tenant's beneficial enjoyment or use of the leased premises; and

(2) An abandonment of possession by the tenant within a reasonable time. Harrison v. Fregger, supra, 88 Mont. 448, 294 P. 372; Merritt v. Tague, 94 Mont. 595, 23 P.2d 340; see also 52 C.J.S. Landlord and Tenant § 445, p. 159.

This court has held that a breach of a covenant for quiet enjoyment can be such an act or omission on the part of the land-

lord which permanently interferes with the tenant's beneficial enjoyment of the premises so as to justify the tenant's abandonment before the lease has expired. York v. Steward, 21 Mont. 515, 55 P. 29, 43 L.R.A. 125; Osmers v. Furey, supra, 32 Mont. 581, 81 P. 345; Blaustein v. Pincus, 47 Mont. 202, 131 P. 1064.

In the York case the breach of the covenant for quiet enjoyment resulted from water seeping into the leased premises because of leaky plumbing and defective construction. In the Blaustein case the covenant for quiet enjoyment was breached when the landlord interrupted the tenant's use of the premises as a lodging house by erecting a garage on adjacent property which emitted loud noises and noxious odors.

A breach of a covenant to repair may likewise be the basis of a constructive eviction. Rea v. Algren, 104 Minn. 316, 116 N.W. 580. Annotations in 28 A.L.R. 1448; 116 A.L.R. 1228, and 28 A.L.R.2d 446, contain a multitude of decisions holding that a breach of a covenant to repair can justify a tenant's abandonment of leased premises.

In the Rea case, supra, which involved the abandonment of premises on the grounds that they had become untenantable by reason of a leaky roof and faulty plumbing, the Minnesota court at page 581 of 116 N.W. said: "The natural tendency of * * * a leaky roof * * * to result in a constructive eviction, must be recognized." See also Valentine v. Woods, 59 Misc. 471, 110 N.Y.S. 990; Zbarazer Realty Co. v. Brandstein, 61 Misc. 623, 113 N.Y.S. 1078; and Bissell v. Lloyd, 100 Ill. 214, for other illustrations of a tenant's abandonment being justified on the basis of a leaky roof.

Defendant contends that even though the covenant to repair had been breached, there had been no permanent interference with plaintiffs' use and enjoyment of the premises. He bases this contention on the fact that part of the premises had been leased to a chiropractor for office space, and part to a furniture dealer for storage space almost immediately after

May 31, 1957, without any further repairs having been made to the roof. This, however, is of no consequence for the crucial factor is whether the leaky roof made the premises untenantable for the purpose for which it was leased by the plaintiffs, not whether someone else did or could occupy the premises for some other purpose.

The breach of the covenant to repair was such an act or omission on the part of the landlord resulting in a permanent interference with the plaintiffs' use and enjoyment as would justify plaintiffs' abandonment of the premises.

This brings us to the question whether the plaintiffs abandoned the premises within a reasonable time. If a tenant remains in possession an unreasonable length of time after the act or omission justifying his abandonment, he has waived his right to do so and claim a constructive eviction. Merritt v. Tague, supra, 94 Mont. 595, 23 P.2d 340. This court in the Tague case indicated that the determination whether abandonment had been within a reasonable time depended on the facts and circumstances involved in the particular case. The court, after holding that a two month delay in that case was unreasonable, stated at page 600 of 94 Mont., at page 342 of 23 P.2d "We do not mean to hold that it should be held under all circumstances, as a matter of law, that this was an unreasonable time within which to abandon the premises. Facts may be adduced in a proper case from which it might be held that such a period of time was reasonable under the circumstances.''

If the condition causing the eviction is something which can be remedied by the landlord, then the tenant should not be said to have waived his rights by remaining in possession until the landlord has had a chance to make repairs. 75 A.L.R. 1114, 1121. The building in the instant case, although it had been leaking since 1946, did not actually become untenantable for the purpose of storing foodstuffs therein until sometime in March of 1957. Plaintiffs relinquished possession of the building no later than May 31, 1957. Plaintiffs did not

retain possession for such an unreasonable length of time as would deprive them of their right to abandon the building if the leaky roof was not adequately repaired.

For the foregoing reasons the judgment of the district court is affirmed.

MR. JUSTICES BOTTOMLY, ANGSTMAN, ADAIR and CASTLES concur.