VARIETY INCORPORATED, a Montana Corporation and CITY PRODUCTS CORPORATION, BUTLER BROTHERS DIVISION, an Ohio Corporation, Plaintiffs and Respondents, v. HUSTAD CORPORATION, a Montana Corporation, Defendant and Appellant, W. T. GRANT COMPANY, a Delaware Corporation, Defendant and Respondent.

No. 10713.

Submitted December 9, 1964. Decided March 26, 1965.

Opinion on costs decided April 30, 1965.

400 P.2d 408.

401 P.2d 581.

Berg, O'Connell & Angel, Bozeman, Jardine, Stephenson, Blewett & Weaver, Great Falls, Ben E. Berg, Jr. (argued), Bozeman, John D. Stephenson (argued), Great Falls, for defendant and appellant.

Morrow & Nash, G. Page Wellcome, James H. Morrow, Jr. (argued), Bozeman, for defendant and respondent.

Landoe & Gary, Bozeman, for plaintiffs and respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This was an appeal by the defendant Hustad Corporation, hereafter referred to as Hustad, from judgments entered against it in favor of the plaintiffs, Variety Incorporated, hereafter referred to as Variety, and City Products Corporation, hereafter referred to as City Products, in the sum of $59,994.32, and in favor of the defendant W. T. Grant Company, hereafter referred to as Grant, in the sum of $5,310.50, and dismissing its

cross-claim against Grant. Subsequent to the taking of the appeal Hustad paid the sum of $46,500.00 to the plaintiffs in full discharge and satisfaction of that particular judgment and by stipulation and order of this court dismissed its appeal from that judgment, but it was further stipulated that such dismissal constituted a covenant not to sue and should not constitute a general release and that Hustad retains all its rights under the appeal as against Grant.

The appeal is therefore now solely from the judgment in favor of Grant, and the dismissal by the court of Hustad's crossclaim against Grant.

The plaintiff Variety was a sublessee of plaintiff City Products, and they operate under what is known as a Ben Franklin franchise.

A brief resume of the facts are that Hustad promoted a shopping center at Bozeman, Montana, known as the Buttrey Shopping Center; space in the building was leased by Hustad to City Products and subleased to Variety on August 2, 1960. On August 6, 1960, Hustad leased some additional space to Variety.

The City Products lease contains this covenant:

"That the Landlord will not, during the term hereof, or any renewal or extension hereof, lease or permit to be used, any portion of the building in which demised premises are situated or any portion of any other building or premises controlled by the Landlord located within one thousand (1,000) feet of the herein demised premises, for any business similar to the business of the Tenant, that is to say, for any variety store, or any business conducted under the name of a five and ten cent store, five cents to one dollar store, or similar name."

The Variety lease contains this covenant:

"It is further agreed between the parties to this lease: Lessor agrees that during the term of this lease, or any renewal thereof, Lessee shall have the exclusive right to operate a Variety Store, and, or, fountain and lunch counter, in the Buttrey Shopping Center."

Both parties knew that Hustad planned to lease space in the shopping center for a junior department store and the lines of merchandise carried would be junior department store merchandise.

Variety commenced to operate a Ben Franklin store and lunch counter in the shopping center on February 15, 1961.

Under a lease agreement dated October 28, 1960, Hustad leased premises in the shopping center to Grant, the lease agreement being executed by Grant on January 19, 1961. Prior to the execution Grant had actual knowledge of the above-quoted provisions existing in the City Products and the Variety leases. The Grant lease provided in Section 12(a) that Grant could use the premises for any lawful purpose, and Section 12(b) reads:

"The Tenant hereby covenants and agrees that notwithstanding the provisions of Section 12(a) hereof, it will not sublet all or any part of the demised premises or assign this Lease for use principally as a food supermarket, coin operated laundry, beauty shop, barber shop, dry cleaners, variety store, hardware store, or drug store during the terms of the existing leases now held by the Landlord, which leases contain exclusive rights to the use of store premises in the Buttrey's Shopping Center for the above specified purposes (but these limitations on Tenant's right to sublet and/or assign shall in no event be wider in scope than the restrictions contained in the respective leases referred to above). It is agreed, however, that as soon as such store premises are no longer occupied, and used as a food supermarket, coin operated laundry, beauty shop, barber shop, dry cleaners, variety store, hardware store or drug store, as the case may be, and in any event upon the expiration or earlier termination of said leases, there shall be no restrictions whatsoever upon the Tenant's right to sublet all or any part of the demised premises or to assign this Lease. Each such restriction upon the Tenant's right to sublet or assign shall terminate as soon as each of the aforesaid store premises cease to be oc-

cupied and used for the specified purposes, or as soon as the exclusive clauses contained in each such lease shall terminate, or as soon as each of the aforesaid leases granting each such exclusive right shall terminate, whichever first occurs, and the Landlord agrees to give the Tenant prompt notice in writing of any such termination. The Landlord also agrees promptly after request therefor by the Tenant to provide the Tenant with complete excerpts of the restrictions contained in the aforesaid leases and any modifications thereof. It is further agreed that *the foregoing shall in no way restrict the use of the demised premises by the Tenant for the sale of food, articles and/or merchandise carried by a* food supermarket, coin operated laundry, beauty shop, barber shop, dry cleaners, *variety store,* hardware store, and/or drug store (except as set forth in subsection (a) of this Section 12.) *so long as the Tenant,* or any successor, subsidiary or controlling corporation *shall occupy said premises* in the Buttrey's Shopping Center." Emphasis supplied.

Section 15(a) reads:

"The Landlord covenants, warrants and represents that it has full right and power to execute and perform the lease and this agreement and to grant the estate demised herein, and covenants that the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of the lease and any extension or renewal thereof. *The Landlord further covenants, warrants and represents that it is seised of an indefeasible estate* in fee simple in the demised premises *free and clear of all* liens, encumbrances, *restrictions* and violations (or claims or notices thereof) except as follows."

On July 2, 1962, plaintiffs filed their complaint alleging that Grant was operating a variety store selling substantially all of the merchandise sold in a variety store; that Grant had knowledge of plaintiffs' leases; that Hustad was permitting

Grant to so operate, and demanded damages against both Hustad and Grant and prayed for an injunction to restrain both defendants from breaching the lease provisions.

Grant then demanded that Hustad provide it with a defense and hold it harmless from expenses and damages, but such demand was refused by Hustad.

Grant in answer denied operating a variety store, alleged it was operating a junior department store, and filed crossclaims against Hustad for breach of the peaceful and quiet enjoyment provision of its lease and asking for rescission of the lease or damages, plus all damages awarded plaintiffs against Grant and further damages if an injunction was granted.

Hustad in answer denied any breach of the lease covenants. Answering Grant's crossclaims it denied any breach of the provisions of Grant's lease, asserted a cross-claim against Grant in effect that if Grant's operations were in violation of plaintiff's rights under their leases then such operations would be unlawful and in violation of Section 12 of its lease, prayed for damages for expenses incurred in defending against plaintiffs, plus the amount of any judgments that might be rendered for plaintiffs, and for any damages resulting from an injunction, and for an injunction against operations by Grant in violation of plaintiffs' leases.

Trial was had before the court, sitting without a jury. Findings of fact and conclusions of law were made, therein the court finding various areas of similarity, contrast, and overlap of plaintiffs' and Grant's store operations in Bozeman, and that the opinions of experts as to what is a variety store were in definite conflict. The court concluded that Grant's operations were contrary to and in violation of the exclusive and restrictive covenants in plaintiff's leases, hereinbefore quoted, and that the lease of Hustad to Grant permitting Grant to so operate constituted breaches thereof by Hustad. Judgments were entered as above-stated, and this appeal taken.

Hustad specifies error in the court concluding that Hustad

breached Section 15(a) of its lease to Grant by its failure to defend; in failing to dismiss the crossclaims of Grant; in entering judgment in favor of Grant on its cross-claims. As to Hustad's crossclaims, that the court erred in dismissing them and in failing to find and enter judgment in favor of Hustad for the relief prayed for;

Before we proceed further it should be noted that Hustad secured the services of a shopping center developer and consultant who contacted Grant and negotiated the lease between Hustad and Grant, for which services he was paid by Hustad. These negotiations commenced in the early part of 1960, continued through the balance of the year, and culminated with the execution of the lease in January of 1961. In other words, it was Hustad who sought out Grant as a tenant in the shopping center.

Then, too, the court found that plaintiff Variety's store carried only "start of the line" merchandise and approximately eighty percent of it could be purchased at Grants and that as to price on such duplicated merchandise it varied a few cents higher or lower between Variety and Grant.

The crux of the case of course is whether or not the operations of Grant were in the nature of a variety store or that of a junior department store. The court's finding was:

"That the opinions of the experts, as to what is a 'variety store,' and more specifically, as it applies to the actual operations of Variety Incorporated and W. T. Grant of Bozeman, Montana, in the Buttrey Shopping Center, are in definite conflict."

A review of the record clearly demonstrates that the court's finding is amply supported by the evidence. Based upon this finding, the court concluded that Grant's operations in Bozeman were in direct competition with the operations of the plaintiffs, thus Hustad had breached the exclusive and restrictive terms of plaintiffs' leases by reason of the execution of the lease with Grant.

Hustad on this appeal has argued the specifications under various categories and we shall adopt the same course in this opinion.

It is Hustad's contention that its failure to defend Grant did not constitute a breach of Section 15(a) of the lease, for the reason that the possession and peaceable and quiet enjoyment of the premises was in no way interfered with. While Hustad cites authorities for this position, it is to be noted that such authorities revolve around the proposition of the absence of any wrongful conduct on the part of the landlord.

In our opinion, the bases for the law suit, which sought an injunction against Grant, were the provisions contained in their lease from Hustad. It is difficult for us to conceive that Hustad, with their wide experience in the shopping center field and having executed the leases with plaintiffs, fully aware of the restrictive covenants therein contained, could then seek out Grant and in Grant's lease insert the provisions of Section 12(b), specifically providing that there shall be no restriction upon Grant selling merchandise sold by a variety store, to then contend that there has been no wrongful conduct on their part. Hustad is a party to every lease and to contend that its left hand does not know what its right hand is doing, but that one of the lessees does, is not worthy of consideration in our opinion. There is no merit to this contention.

Hustad further contends that in order to find liability there must be an eviction, though such eviction may be either actual or constructive. There was no actual eviction here and Hustad contends there was no act or omission on its part which amounted to a constructive eviction, citing Sewell v. Hukill, 138 Mont. 242, 356 P.2d 39, as the applicable authority. However, that case arose from the vacation of leased premises by a tenant by reason of a leaking roof which the landlord had failed to repair and the law as therein stated fits the facts of that case but is not applicable to the facts of this case.

In an earlier Montana case, Blaustein v. Pincus, 47 Mont. 202,

131 P. 1064, this court held that noises, smoke and smell from a garage leased by the landlord to another tenant were sufficient to destroy the quiet enjoyment of the property being operated as a lodging house by the plaintiffs under lease from the same landlord, and were tantamount to an eviction.

Under the evidence in this case we have no hesitancy in holding there was a constructive eviction.

As to the cross-claim against Grant, Hustad contends it is entitled to recoup from Grant its expenses and all amounts awarded plaintiffs. Hustad's argument is that the court in finding that Hustad's lease to Grant breached the covenants in the plaintiffs' leases, in that Section 12(b), permitted Grant to sell articles and merchandise carried by a variety store but that such section was specifically restricted by Section 12(a) to "any lawful purpose," and that if Grant conducted its operations as a variety store then it was Grant who violated the restrictive covenants in the plaintiffs' lease and the "lawful purpose" exception in the Hustad-Grant lease.

Hustad cites Mook v. Weaver Bros., Inc., 61 App.D.C. 214, 59 F.2d 1028, in support of its argument. In that case a demurrer was sustained to a complaint seeking damages against a landlord for violation of a restrictive covenant in a lease, the complaint alleging that plaintiff leased a certain store room in the building and conducted therein a delicatessen store; that it was stipulated in the lease, among other things, that no delicatessen store should be permitted by the landlord in any of the other store rooms in the building; that notwithstanding such provisions the landlord subsequently rented store rooms to a company which, while not conducting or operating a business known as, and called, a delicatessen store, nevertheless dealt in goods, wares and merchandise similar to those in which plaintiff dealt. The court pointed out that plaintiff did not allege that the landlord actually leased any of the rooms for a delicatessen store but simply claimed that the other tenant dealt in articles similar to those sold in deli-

catessen stores; that such allegation was not sufficient to charge a breach of the lease covenant for it left open the implication that the stores differed in some substantial particulars, otherwise the same name would have applied to both.

In our view, a far different situation exists here, and since our attention has been called to the annotation in 90 A.L.R. 1449, wherein the Mook case is discussed, it is interesting to note that the annotator in the section dealing with that case states: "There is apparently a divergence of opinion among the cases in this subdivision which baffles any attempt at reconciliation."

In Parker v. Levin, 285 Mass. 125, 188 N.E. 502, 90 A.L.R. 1446, a case involving almost the identical situation as disclosed in the Mook case, supra, the court stated:

"A delicatessen store, within the meaning of the covenant, is one that sells delicatessen, and not merely one that sells nothing else. Fitz v. Iles, [1893] 1 Ch. 77; Waldorf-Astoria Segar Co. v. Salomon, 109 App.Div. 65, 95 N.Y.S. 1053, affirmed 184 N.Y. 584, 77 N.E. 1197. We cannot follow Mook v. Weaver Brothers, Inc., 61 App. D.C. 214, 59 F.2d 1028, so far as it may tend to the contrary." We concur in this statement of the Massachusetts court.

With regard to Grant's contended violation of the restrictive covenants, Hustad contends that since Grant knew of the covenants in the plaintiffs' leases they were binding upon it and since Grant's operations were of the broad variety store type rather than those of a junior department store type this was the basic cause of plaintiffs' damages and not the execution of the lease between Hustad and Grant.

However, as we have heretofore commented, this record discloses that even the experts are in conflict as to what is a variety store. Grant, a nation-wide organization operating stores of the same type as in Bozeman, with whose operations Hustad was familiar, and who sought them out as a lessee, coupled with the negotiations and requested changes sought

and granted in the Hustad-Grant lease, surely would have indicated to Hustad that he might become involved by reason of the restrictive covenants already granted by it in its leases to plaintiff.

The fact that Grant's business is broader than plaintiffs' and handles other goods not competitive with those of the plaintiffs should not necessarily defeat the conclusion that the two businesses are the same or similar and of the type known as a variety store.

Hustad further contends that an implied contract of indemnity arises in favor of a party, who without fault on his part, is exposed to liability and compelled to pay damages on account of the tortious act of another, and that such right exists even between joint tort feasors where one was only technically or constructively at fault, as from the failure to perform some legal duty, and the negligence or wrongful act of the party from whom indemnity is sought was the primary or proximate cause of the injury.

While Hustad contends that it was the unlawful operations conducted by Grant in violation of both the lawful purpose clause and the restrictive covenants in plaintiffs' leases that was the active cause of plaintiffs' damages, we cannot accept such to be the fact and we feel what has been heretofore stated disposes of this contention.

We do not disagree with the ruling in Great Northern Ry. v. United States, 187 F.Supp. 690, but fail to see its applicability to this case. As Judge Jameson there pointed out, the general principle of law is well-settled that one of the several wrongdoers cannot recover against another wrongdoer although he may have been compelled to pay all the damages for the wrong done. The exception to the general rule arises in favor of one less culpable who may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. We see nothing in this record that would bring into play this exception to the general rule.

We have been cited to many statements of general rules from texts, digests, and annotations, even to an annotation comprising more than 100 pages, as authorities for the positions of the parties to this appeal. Our review of these leads to but one conclusion, each case is governed by the fact situation there appearing, and statements of general rules, subject to a multitude of exceptions, are of little assistance.

We conclude that the district court was correct in its judgment and it is affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, DOYLE, ADAIR and CASTLES, concur.

## Order on Costs

PER CURIAM:

In this cause W. T. Grant Company moved this court to set attorneys' fees on appeal as part of the allowable costs. Upon reading and giving consideration to the motion an order to show cause was issued requiring the Hustad Corporation to be and appear before this court to show cause, if any they had, why a reasonable amount should not be allowed Grant as its attorneys' fees on appeal and covering the damages suffered by Grant by virtue of the appeal.

Both parties appeared on the return day, submitted briefs and presented arguments to the court.

It is Hustad's position, first that this court does not have jurisdiction, in that the remittitur has already issued.

(2) That attorney's fees on appeal are not proper cost items; and,

(3) That insofar as attorney's fees as damages there are no pleadings, other than an oral motion during oral argument on appeal, no record evidence or proof thereof, and that the fee suggested is unreasonable.

We have considered this matter carefully and conclude that if there be any right of claim for relief here such claim must

be prosecuted in the usual manner when one seeks damages and therefore the matter is now in the wrong forum and that our order to show cause was improvidently issued. For that reason the order to show cause is quashed and the motion is denied.